IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| **NETFLIX, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 9:22-cv-00031** |
| | § | |
| **LUCAS BABIN,** | § | |
| **Defendant.** | § | |

## COMPLAINT FOR INJUNCTIVE RELIEF

Netflix brings this Complaint to enjoin Tyler County District Attorney Lucas Babin from abusing his office and infringing Netflix, Inc.'s constitutional rights. Babin continues to indict Netflix without probable cause for the "promotion" of the film *Cuties*: a coming-of-age tale and social commentary about the negative influence of social media and the hypersexualization of young girls. As Babin is well-aware, *Cuties* violates no laws: it contains nothing obscene, it contains no scenes of children engaged in "sexual conduct," it contains no "lewd depictions of minors." Indeed, other prosecutors in Texas have not only refused to take up for his ill-advised indictment(s), they have also conceded that *Cuties* is *not* criminal but has "serious political, literary, and artistic value."[1] But this one prosecutor—out of all the prosecutors in America—has indicted Netflix not just once but *five times*. Each indictment violates the United States Constitution and comes in retaliation against Netflix's exercising its First Amendment rights to free speech and to petition the government for redress. Enough is enough.

Babin purports to have watched *Cuties*. He therefore knows the character and content of the film. As Tyler County's lead criminal lawyer, Babin *should* therefore

---

[1] The State made the following concession before the First District Court of Appeals during oral argument: "the State acknowledged the charges against Netflix, expressed that it could not explain another county's decision to prosecute, and believed Netflix's movie had political, literary, and artistic value." *Ex Parte Lowry*, No. 01-20-00858-CR, 2021 WL 4953918, *11 (Tex. App.—Houston [1st Dist.] Oct. 26, 2021, pet. granted). Netflix notes that the Texas Court of Criminal Appeals granted the State's petition for review in *Lowry* on March 2, 2022.

know that he has no legal or factual basis for any of his five indictments. And Babin has all but admitted that he brought his newly-filed indictments in retaliation for Netflix's exercise of its statutory and constitutional right to challenge the original indictment through a pretrial writ of habeas corpus. Babin's conduct makes clear that there will be no end to Babin's abuse of his prosecutorial power without intervention by this court. Netflix thus  files this complaint under 42 U.S.C. § 1983 and seeks a temporary restraining order and preliminary and permanent injunctive relief to end Babin's unlawful and unconstitutional campaign.

Netflix does not invoke this Court's jurisdiction lightly.  Netflix recognizes that federal courts do not often entertain suits to enjoin state criminal actions, and acknowledges the extraordinary nature of this action and the remedies Netflix seeks. This is, however, an extraordinary case, and Babin's singular and bad-faith effort to pursue Netflix for exercising its free speech and petition rights under the First Amendment on trumped up charges that he cannot prove as a matter of law require extraordinary measures. Without the Court's intervention, Netflix will suffer irreparable harm by being forced to continue playing Babin's game in state court and defending itself against even more baseless charges. The Court has jurisdiction over this case, and should grant Netflix the preliminary and permanent injunctive relief Netflix needs to vindicate its rights for all of the reasons shown further below.

## I. PARTIES

1.     Netflix, Inc. is a Delaware Corporation with its principal place of business in California.

2.     Lucas Babin is a Texas citizen who may be served with process at 100 W. Bluff St., Annex Building, Woodville, Texas 75979 or wherever he may be found.

## II. JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1983 and the First, Fifth,

and Fourteenth Amendments of the United States Constitution, and 28 U.S.C. § 1332, as the parties are completely diverse and the amount in controversy exceeds $75,000 because the value of the object of the case—the vindication of Netflix's constitutional rights and the entry of an order enjoining Babin from pursuing baseless and bad-faith charges in state court—exceeds $75,000.

4.    Furthermore, the Court has jurisdiction to enjoin pending criminal matters pending in state court under the bad-faith and patently-unconstitutional exceptions to *Younger v. Harris*, 401 U.S. 37 (1971).

5.    This Court has personal jurisdiction over Babin because he is located in Texas and all misconduct alleged in the complaint occurred in Texas.

6.    Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims herein occurred and continue to occur in this judicial district.

### III. STATEMENT OF FACTS

**A.    NETFLIX PROMOTES *CUTIES*: A FILM WITH SERIOUS LITERARY, ARTISTIC, AND POLITICAL VALUE.**

7.    *Cuties* ("Mignonnes" in its native French) is the story of Amy, an eleven-year old Senegalese immigrant caught between cultures: her devoutly Muslim family and the "Cuties"—a self-named dance group of Amy's peers who have their hearts set on trying out for and performing at a big dance competition in town.[2]

8.    Like Amy, the other Cuties enjoy almost no parental supervision. Unlike Amy, they also have unfettered and unmonitored access to social media and the internet, which they access through their parent-provided computers and smartphones.

---

[2] Although *Cuties* is available to Netflix customers on the Netflix service, **Netflix has moved for leave to file a copy of the film as Exhibit 1 under seal to ensure against unlawful acquisition or copying.**

9.     The unsupervised Cutie" wear provocative clothes and makeup intended to make them look older than they are, which they then use unsuccessfully to draw the attention of much older teenage boys using wiles their immature figures cannot sustain. The Cuties also listen to mature and suggestive music to match their mature and suggestive dances, which they practice and perform in the hopes of besting much older and physically more mature dancers.

10.     *Cuties* uses the vast majority of its 91-minute runtime exploring and portraying various relationships (e.g., fraternal, maternal, paternal (or lack thereof), and platonic), while vividly revealing to viewers the dangers and consequences of leaving children unrestrained from—and at the mercy of—the highly sexualized and media-driven culture in which they are now immersed.

11.     *Cuties* shows further that the consequences of a child's unfettered consumption of sexualized media will likely lead to more than innocence lost: victimization (including self-victimization), shame, and the assimilation of degrading notions about sexuality may also follow.

12.     The dance scenes comprise roughly seven minutes (i.e., 7%) of this 90-minute film.

13.     There are no sexually explicit scenes involving any minors (or anyone else) within *Cuties*.

14.     While there is one scene where a woman flashes her bare breast for a split second, this actress was 18 or older when the scene was filmed.[3]

15.     *Cuties*' message to its viewers is timely. Concerns about the hyper-sexualization of children, primarily girls, are as heightened in Texas as in the world portrayed in *Cuties*.

---

[3] Ex. 4, Information Sheet (with certified translation).

16.     *Cuties* was first exhibited—and won awards—at the Sundance Film Festival in Utah in January of 2020. No indictments or preliminary hearings have ever resulted in Utah from that or any other showing of *Cuties*.

17.     Netflix began streaming *Cuties*, and its timely and important message, to its subscribers (including those in Texas) on Netflix on September 9, 2020.

**B.     Babin Obtains and Pursues His First Indictment Against Netflix Without Probable Cause and Charges Netflix with Violating Texas Penal Code § 43.262.**

18.     Roughly three weeks after *Cuties* launched on the Netflix service, Babin served on Netflix a felony indictment (the "First Indictment") for violation of Texas Penal Code § 43.262,[4] which criminalizes the knowing possession, access (with intent to view), or "promotion" of "visual material" that "(1) depicts the lewd exhibition of the genitals or pubic area of a . . . partially clothed, or clothed child who is younger than 18 years of age at the time the visual material was created; (2) appeals to the prurient interest in sex; and (3) has no serious literary, artistic, political, or scientific value." Tex. Penal Code § 43.262(b) (cleaned up).

19.     Babin's First Indictment accused Netflix of "knowingly promoting visual material which depicts the lewd exhibition of the *genitals or pubic area* of a *clothed or partially clothed* child who was *younger than 18 years of age* at the time the visual material was created," and that such material "appeals to the prurient interest in sex, and has no serious literary, artistic, political, or scientific value."[5]

20.     Babin took no issue in his First Indictment with the scene where the adult woman flashes her breast.[6]

21.     Moreover, although the First Indictment alludes to the statute's inclusion of visual materials depicting "genitals" (i.e., the actual anatomical parts),

---

[4] Ex. 2, First Indictment.
[5] *Id.*
[6] *Id.*

as Babin knew or should have known at the time, no one's genitals are "exhibited" (i.e., publicly displayed) at any point in *Cuties*, whether lewdly or otherwise.[7]

22.    Section 43.262 does not criminalize child pornography, which is subject to other statutory prohibitions.

23.    Instead, the Texas Legislature enacted Section 43.262 to reach "visual materials" that fell outside the scope of Texas's child pornography statutes—a category of materials the Texas Legislature dubbed "child erotica": "images portray[ing] an unclothed, partially clothed, or clothed child depicted in a sexually explicit manner indicating the child has a *willingness* to engage in sexual activity"— whether they engaged in such activity or not. Senate Research Ctr., Bill Analysis, Tex. H.B. 1810, 85th Leg., R.S. (2017) (emphasis added).

24.    By issuing his First Indictment against Netflix under Section 43.262— and solely under Section 43.262—Babin tacitly acknowledged that *Cuties* did not amount to child pornography.

25.    In a press release Babin issued shortly after making his First Indictment public in October of 2020, Babin mentioned *nothing* about the film allegedly violating *any* child pornography statutes. To the contrary, as in the First Indictment, Babin claimed merely that "[a]fter hearing about the movie Cuties [sic] and *watching it*, he knew there was probable cause to believe that *Cuties* was criminal under Section 43.262 of the Texas Penal Code." (cleaned up, emphasis added).[8]

26.    Any reasonable lawyer who actually watched the film (as Babin claims to have done), and who conducted even a modest amount of research about the film's brief history, would have known that there is no good-faith basis for believing probable cause existed to indict Netflix for promoting the film because there is no

---

[7] Ex. 2.
[8] Ex. 3, Lucas Babin Press Release (Oct. 2020).

legal or factual basis for concluding that *Cuties* violates two of Section 43.262's three main elements: Section 43.262(b)(2) and (b)(3).

27.     No reasonable person who watched *Cuties* could conclude that there is any probable cause to believe that any of *Cuties*' scenes violate Section 43.262(b)(2), i.e., "appeal to the prurient interest in sex." That phrase is almost always construed to refer to "the public portrayal of ***hard core sexual conduct** for its own sake*." *Jenkins v. Georgia*, 418 U.S. 153, 161 (1974) (cleaned up, emphasis added). *Cuties* contains no such content.

28.     Second, Babin had no factual or legal basis to conclude that probable cause existed to assert that *Cuties* had "*no* serious literary, artistic, political, or scientific value" in violation of Section 43.262(b)(3). Indeed, *before* Babin convened his grand jury, *Cuties* had already won awards at film festivals and had generated a considerable number of valuable and public discussions on a host of social issues in reputable and venerable institutions like *The New Yorker* and *The Washington Post* (among many others).

29.     In fact, while Babin's First Indictment against Netflix was pending, Babin's own cohorts—his fellow district attorneys—conceded to Texas's state judiciary that *Cuties* did have serious value and could not explain Babin's decision to indict Netflix for *Cuties*' promotion.

30.     Public reaction to Babin's First Indictment was almost universally negative, as exemplified by *Dallas Morning News* columnist Mark Davis, who described the First Indictment as "a document of misplaced aggression."

**C.     Netflix Pleads Not Guilty and Meets with Babin About The Case in the Hope of Resolving It Amicably.**

31.     After receiving service of Babin's First Indictment, and retaining counsel, Netflix (through its counsel) asked to meet with Babin to discuss the case and the indictment.

32.     This meeting occurred on October 9, 2020, at 2:00 p.m. in Woodville, Texas at Babin's offices.

33.     During this meeting, Netflix probed Babin and his assistant district attorney, Pat "Hawk" Hardy, as to what *specifically* prompted the indictment.

34.     In an effort to resolve the case quietly and without further expense to Netflix or the State, Netflix volunteered to Babin and Hardy that if the issue were the fleeting sight of a woman's breast, that they should know that the woman was over eighteen and thus not a child when that scene was filmed.

35.     Netflix even offered to show Babin and Hardy proof of that fact—the proof Netflix had already provided the Texas Attorney General's office.[9]

36.     Babin and Hardy expressed no need to look at such proof, and conceded that they had no issue with that fleeting moment in the film. Babin and Hardy said the gravamen of the First Indictment was instead the suggestive way in which the younger, *clothed* girls (the Cuties) danced and the footage showing those dances.

37.     At that point, the conversation settled on why that kind of activity didn't meet Section 43.262's elements, or why, if it did, that statute couldn't survive constitutional scrutiny under the First Amendment.

38.     When it became clear that neither side would be persuaded by the other, the meeting concluded amicably.

39.     Two weeks later, on October 23, 2020, Netflix waived its right to an arraignment and entered a plea of NOT GUILTY on all charges.

40.     Between October of 2020 and August of 2021 virtually nothing happened in the case: no hearings were set; the State served no requests for pre-trial discovery; no experts were designated; Netflix filed no motions.

---

[9] Ex. 4.

41.     In fact, even when the case was set for docket call in August of 2021 (without any notice to Netflix), Netflix and the State quickly agreed to push that initial hearing by six months, to February 17, 2022.

**C.     After Texas's First District Court of Appeals in Houston Declares Texas Penal Code § 43.262 Facially Unconstitutional Under the First Amendment—and Cites Babin's First Indictment as One of the Bases for Its Holding—Babin Refuses Netflix's Request to Dismiss the First Indictment.**

42.     On October 26, 2021,  Texas's First District Court of Appeals in Houston struck Section 43.262 as facially unconstitutional in substantially all of its applications under the First Amendment in *Ex Parte Lowry*.

43.     In reaching this holding, the court expressly invoked Babin's ill-advised prosecution of Netflix under Section 43.262 as justification (at least in part) for its decision. What is more, the court took the additional step of contrasting Babin's position on Netflix, with the position the State took in *Ex Parte Lowry* while trying to defend Section 43.262: "the State could not explain another county's decision to prosecute, **and believed Netflix's movie had political, literary, and artistic value**." *Lowry*, 2021 WL 4953918, *11.

44.     Netflix emailed Babin a copy of the *Lowry* decision the day it came down, reminding Babin that his obligations to enforce the State's laws "extend only to constitutional laws, and, under *Ex Parte Lowry*, Section 43.262 is not one of them."[10]

45.     Netflix then asked Babin "to dismiss all charges against Netflix" so that Netflix could avoid having to "file [a] pretrial habeas petition, and various pre-trial motions, very soon to ensure that at least the pretrial habeas petition was decided well in advance of [the February initial hearing date]."

46.     Babin refused to dismiss the First Indictment—until it served his purposes later.

---

[10] Ex. 4 (Doc. 1-4).

**D.** **With Babin Refusing to Dismiss the First Indictment Despite *Lowry*'s Holding, Netflix Petitions the State Court for Redress Through Pretrial Habeas Relief in State Court, and Shows that Section 43.262 Is Facially Unconstitutional and that Babin's First Indictment Was Without Probable Cause.**

47.     Unable to persuade Babin to follow the law, Netflix filed its Petition for a Pre-Trial Writ of Habeas Corpus on November 15, 2021, seeking dismissal of all charges on grounds that Section 43.262 was facially unconstitutional under several constitutional provisions.[11]

48.     Under Texas law, Netflix could pursue a constitutional challenge to the statute at issue through pretrial habeas relief—which includes an immediate right of appeal—only if Netflix challenged the statute on its face, as did the successful petitioner in *Lowry*.[12]

49.     In its petition, Netflix established that it was entitled to *immediate* pretrial relief on multiple grounds: (1) the "visual materials" at issue Section 43.262 were not "child pornography" as defined under Section 43.25, and were thus subject to typical First Amendment standards and thus presumptively entitled to protection; (2) Section 43.262's material elements were so "hopelessly indeterminate" that they deprived ordinary citizens of adequate notice, gave undue discretion to the State's prosecutors, and thus unduly chilled protected speech in violation of the Fifth and Fourteenth Amendments of the United States Constitution; and (3) under any construction, and under *Lowry*, Section 43.262 violated Netflix's First Amendment rights as an overbroad restriction on speech that failed *Miller* and discriminated on the basis of viewpoint.[13]

50.     In making these arguments, especially about issues related to Section 43.262(b)(2) and (b)(3), Netflix showed more than that Section 43.262 was unconstitutional and that Netflix was entitled to immediate dismissal. Netflix's

---

[11] Ex. 5.
[12] Ex. 5 at 11–12.
[13] Ex. 5 at 13–44.

arguments exposed something even more foundational: that Babin never had probable cause to seek or pursue First Indictment in the first instance and had no hope of prevailing in that case even setting aside Section 43.262's profound constitutional issues.[14]

51.    After filing and later amending its petition, Netflix requested hearing dates from the state trial court on November 15, 18, 22, and 23 to no avail.

52.    At the district clerk's request, Netflix then filed a letter on December 3, 2021 making a formal request for hearing dates, which then prompted the district clerk's office to offer the parities January 4, 2022 for a hearing on Netflix's habeas petition.

53.    Although Netflix accepted the January 4 date, Babin objected and insisted on a date in March instead.

54.    Babin's only *stated* reason for refusing the January 4 date was his (mis)reading of a Texas statute that requires 45-days' notice to the Texas Attorney General before a trial court may enter a *final judgment* invalidating a state statute on constitutional grounds. A statute precluding entry of final judgments with less than 45-days' notice does not precluded a trial court from *hearing* a pre-trial habeas petition on less than 45-days' notice.

55.    In fact, the date the clerk offered—January 4—was *43 days* after the date the Attorney General received notice of Netflix's challenge (November 22, 2021), meaning that even accepting Babin's misapplication of the notice statute, the trial court could have heard the petition on January 4 and then ruled in Netflix's favor just three days later and consistent with the statute.

---

[14] *See* Ex. 5 at 27–32 (showing that even films that portray clothed children "lewdly exhibiting" their clothed pubic areas cannot satisfy *Miller*'s prurient interest element as a matter of law).

56.     Nevertheless, rather than force a hearing on a scheduling issue in a criminal case in Tyler County, where Babin is the district attorney, Netflix capitulated and agreed to the March 3 setting.

**E.     Instead of Defending His First Indictment or Section 43.262 Itself, Babin Uses the Additional Time Before Netflix's Hearing to Seek Four New Indictments Without Probable Cause, and to Pursue a Bad Faith Effort to Retaliate Against Netflix for Exercising Its Free Speech Rights and Right of Petition.**

57.     Babin's real purpose for seeking to delay hearing on Netflix's habeas petition—and despite Texas Code of Criminal Procedure Article 11.15's clear directive to issue such relief "without delay"—was a purposeful effort to deprive Netflix of its day in court, and of its inevitable and favorable judgment that Section 43.262 is facially unconstitutional, and to chill Netflix's (and the public's) free speech rights.

58.     With Netflix's habeas petition set for hearing on March 3, 2022, Babin used the next 90 days to (1) convene a secret grand jury starting in January of 2022 (i.e., after the date Netflix sought its hearing); and (2) seek and obtain in those grand jury proceedings—without probable cause—four new indictments (the "New Indictments") against Netflix under a statute, Texas Penal Code § 43.25, that has no applicability to *Cuties* but that Babin knew Netflix could not challenge in habeas proceedings (i.e., because, as Netflix had conceded in its habeas petition, that statute was facially constitutional).

59.     Babin's plan was then to hold the indictments until the literal eve of the hearing on Netflix's habeas petition and then announce the New Indictments and his decision to unilaterally dismiss the First Indictment (albeit without prejudice) and thus ensure that Netflix obtains no relief against Section 43.262 while Netflix remains under indictment for state criminal charges under Section 43.25.

60.     The four New Indictments the grand jury issued at Babin's request were on record with the Tyler County District Clerk's office as early as February 25, 2022.[15] Nevertheless, Babin waited until March 1, 2022—two days before the scheduled hearing on Netflix's habeas petition—to inform Netflix that "separate indictments will be served on [Netflix's] registered agent within the next few days," and then refused multiple requests by Netflix's counsel for courtesy copies of the New Indictments, providing them only once Netflix agreed to waive its right to formal service.

61.     By March 1, 2022, Babin's First Indictment had been pending for more than 500 days. *Cuties*' content never changed during that time. Yet, Babin made no effort prior to that time to amend the First Indictment or issue new ones. Babin decided to convene a grand jury only after receiving Netflix's habeas petition and Netflix's arguments exposing not only Section 43.262's serious constitutional issues, but also Babin's complete lack of probable cause for indicting Netflix under that statute. The New Indictments are therefore intended *not* to pursue valid or even *colorable* charges, but to harass Netflix and to retaliate against Netflix for exercising its free speech and petition rights under the First Amendment.

62.     Babin also waited until March 1, 2022—more than 120 days *after* Netflix originally requested the First Indictment's dismissal in light of *Lowry* and only *after* Netflix had spent considerable additional time, effort, and money preparing for the hearing and to travel to the hearing—to tell Netflix he would dismissing the First Indictment under Section 43.262 the next day (March 2, the day before Netflix's hearing).

63.     In the motion to dismiss the Section 43.262 case filed March 2, Babin emphasized that "the charged portion of Texas Penal Code § 43.262 *is* constitutional"

---

[15] Ex. 6 to Ex. 9.

and therefore limited his dismissal to one "without prejudice."[16] Babin and his grand jury could therefore reindict Netflix under Section 43.262 at any time, and despite Netflix's prior efforts to vindicate its constitutional rights against such an indictment in state court.

64.     Faced with new charges that it could not challenge through pre-trial habeas relief, and lacking any *pending* charges under the statute it had challenged in its pretrial habeas petition, Netflix had no choice but to dismiss its habeas action on March 2, 2022, and thus abandon all of the additional rights that petition afforded Netflix, including an immediate right of appeal and the immediate removal of the chill that Babin's First Indictment threatened on Netflix's (and the public's) rights.[17]

65.     Between the date of the First Indictment under Section 43.262, and the date Netflix filed its habeas petition, Babin had more than 400 days to convene his grand jury to seek these new indictments. Babin nonetheless waited until well after Netflix petitioned the court for redress to seek these new charges.

66.     Despite previously failing to include any mention in the First Indictment of the scene where an adult actress flashed her breast, and despite previously telling Netflix that the First Indictment was not issued as a result of that scene, and despite refusing Netflix's offer on October 9 to show that the actress in that scene was, in fact, an adult at the time, one of Babin's New Indictments (Cause No 13,969) is based on facts that Babin knew or should have known were manifestly untrue: that "Jane Doe, **a white female with red hair**, portraying the role of a dancer in a dance troupe named in the motion picture, Cuties, as Sweety Swaag, [engaged] in lewd exhibition of the female breast below the top of the areola, **said Jane Doe being a child who was then and there younger than eighteen (18) years of age**."[18]

---

[16] Ex. 10, State's Motion to Dismiss.
[17] Ex. 11, Netflix, Inc.'s Notice of Non-Suit.
[18] Ex. 6 (cleaned up).

67.     The other three New Indictments Babin obtained against Netflix under Section 43.25 also hinge on a charge that has no basis in fact or law: that Netflix "intentionally and knowingly promoted a performance, *Cuties*, that included *sexual conduct* by [three of the Cuties], who were then and there younger than eighteen (18) years of age[.]"[19]

68.     Neither Babin nor the grand jury provides Netflix any notice in these indictments as to what "sexual conduct" they actually observed in *Cuties*—because they can't. As Netflix had already showed in its habeas petition,[20] *Cuties* contains no "sexual conduct." That is why Babin indicted under Section 43.262 in his First Indictment—because that section doesn't require any showing of "sexual conduct."

69.     "Sexual conduct" as defined in Section 43.25 means "sexual contact,[21] actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of *the genitals*, the anus, or any portion of the female breast below the top of the areola." (emphasis added).

70.     There is not a single scene in *Cuties* that depicts any of those explicit sexual acts, or where a child "exhibits" any of those anatomical parts, lewdly or otherwise.

71.     To apply Section 43.25 as broadly as Babin apparently does, will criminalize not merely *Cuties*, but a vast swath of protected speech, making the statute unconstitutional as applied to Netflix and to *Cuties* and make felons out of millions of Texans: every person who has streamed *Cuties* since its arrival on Netflix; every person who has "promoted" or "advertised" the film, such as by posting a positive film review on popular media sites or social media (*see e.g.*, Texas Penal Code § 43.26); even every person who used screen shots from *Cuties* to explain why they

---

[19] Ex. 11–13 (cleaned up, emphasis added).
[20] Ex. 5 at 13–44.
[21] "Sexual contact" means "any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or gratify the sexual desire of any person." Texas Penal Code § 43.01, *incorporated by reference in id.* § 43.25(a)(7).

are so critical of the film's content and message.[22] Saying nothing of the millions of people who daily share and watch countless other videos and images hosted on countless online media sites (such as TikTok, Instagram, YouTube, etc.) that inspired *Cuties*' message in the first instance.

72.    Netflix was ready to resolve Babin's original and baseless First Indictment under Section 43.262 in state court. But Babin, through his bad faith and retaliatory actions, stripped Netflix of its ability to obtain relief against that First Indictment when he dismissed those charges in favor of the New Indictments he obtained without probable cause and in retaliation for Netflix's exercise of its free speech and petition rights under the First Amendment.

73.    Netflix seeks now to vindicate its constitutional rights in a federal forum because the nature of Netflix's constitutional claims coupled with the bad-faith nature of Babin's conduct gives rise to a right to a federal forum, notwithstanding the pendency of criminal charges in state court.

---

[22] For a vivid illustration of this risk, see what John Nolte posted in his piece "Elite Media Defend 'Cuties' While Covering Up Most Salacious Content from Readers." *See* Breitbart.com (Sept. 18, 2020) (available at www.breitbart.com/entertainment/2020/09/18/nolte-elite-media-defend-cuties-covering-most-salacious-content/). If *Cuties* is truly violative of Section 43.25, as Babin has asserted in his and his grand jury's indictments, Mr. Nolte is at *substantial* risk not merely of extradition and felony indictment but of felony *conviction*: his incriminating postproduction alterations of the images he included in his piece from *Cuties* are no defense to a real charge of child pornography. *Cf. United States v. Grimes*, 244 F.3d 375, 380 (5th Cir. 2001) (holding that placing postproduction pixel blocks over the genitals shown in defendant's pictures of nude children rendered the defendant subject to prosecution under federal child pornography laws where the original material depicted minors engaged in sexually explicit conduct and thus remained a "lascivious exhibition" of the genitals).

---

## IV. Causes of Action

### Count I
### <u>Violation of Netflix's Fifth Amendment Rights under 42 U.S.C. § 1983 Resulting from Babin's Enforcement of Section 43.262</u>

74.    Netflix incorporates by reference the allegations contained in Paragraphs 1 through 72 as if fully set forth herein.

75.    Babin acted under color of state law and in violation of Netflix's Fifth Amendment rights when he indicted and prosecuted Netflix under Section 43.262 because Section 43.262 is unconstitutionally vague.

76.    Despite the fact that the "visual materials" that fall within Section 43.262's scope are subject to *Miller*'s established test, Section 43.262 fails to incorporate all *Miller* elements. And because Section 43.262 lacks all *Miller* elements, the only way to save the statute is to rewrite it by judicial fiat—which is itself constitutionally impermissible.

77.    Moreover, placed within Section 43.262's unique context, several material elements of the statute—its mere "knowing" standard for culpability, its undefined use of "lewd exhibition," and its seemingly futile or incoherent use of *Miller*'s "appeals to the prurient interest in sex" test—render the statute hopelessly indiscriminate, invite arbitrary and unconstitutional exercises of prosecutorial and executive power, and thus chill protected speech. Section 43.262 is therefore facially unconstitutional in all of its applications.

78.    The fact that Babin dismissed the First Indictment and charges under Section 43.262 does not deprive Netflix of the ability to challenge the statute's validity in this Court.

79.    Babin already charged Netflix under the statute and required Netflix to endure prosecution under that statute for more than 500 days before unilaterally dismissing the original indictment to avoid having to defend both his indictment and the statute in a losing battle.

80.     But by expressly seeking dismissal of the First Indictment "without prejudice," and by reasserting his belief that Section 43.262 is constitutional—despite what Texas's First District Court of Appeals held in *Lowry*—Babin has reserved his right to reindict Netflix under Section 43.262 in the future.

81.     Babin's bad-faith effort to avoid Netflix's challenge, coupled with his express reservation of the right to seek Netflix's indictment under that statute in the future, gives rise to a live case or controversy.

82.     Netflix therefore seeks preliminary and permanent injunctive relief against Babin to ensure he never again indicts Netflix under Section 43.262.

**COUNT II**
**VIOLATION OF NETFLIX'S FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983 THROUGH BABIN'S PROSECUTION UNDER SECTION 43.262**

83.     Netflix incorporates by reference the allegations contained in Paragraphs 1 through XX as if fully set forth herein.

84.     Babin acted under color of state law and in violation of Netflix's First Amendment rights when he indicted and prosecuted Netflix under Section 43.262 because Section 43.262 is an impermissible content- and viewpoint-based restriction that is not narrowly tailored to serve a compelling state interest and that is overbroad.

85.     Because Section 43.262 criminalizes activity based not only on the content of "visual material," but also the viewpoints expressed when "promoting" such material, Babin's prior enforcement and his threatened enforcement of that statute violates the First Amendment.

86.     The fact that Babin dismissed the First Indictment and charges under Section 43.262 does not deprive Netflix of the ability to challenge the statute's validity in this Court.

87.     Babin already charged Netflix under the statute and required Netflix to endure prosecution under that statute for more than 500 days before unilaterally

dismissing the First Indictment to avoid having to defend both his indictment and the statute in a losing battle.

88.    But by expressly seeking dismissal of the First Indictment "without prejudice," and by reasserting his belief that Section 43.262 is constitutional—despite what Texas's First District Court of Appeals held in *Lowry*—Babin has reserved his right to reindict Netflix under Section 43.262.

89.    Babin's bad-faith effort to avoid Netflix's challenge, coupled with his express reservation of the right seek Netflix's indictment under that statute in the future, gives rise to a live case or controversy.

90.    Netflix therefore seeks preliminary and permanent injunctive relief against Babin to ensure he never again indicts Netflix under Section 43.262.

### COUNT III
### VIOLATION OF NETFLIX'S FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983 THROUGH BABIN'S PROSECUTION UNDER SECTION 43.25

91.    Netflix incorporates by reference the allegations contained in Paragraphs 1 through XX as if fully set forth herein.

92.    Babin acted under color of state law and in violation of Netflix's First Amendment rights when he indicted and prosecuted Netflix under Section 43.25 because, as applied to *Cuties* and Netflix, Section 43.25 is unconstitutional under the First Amendment.

93.    Applying Section 43.25's prohibitions against the sexual performance of a child to *Cuties* violates the First Amendment because in stretching the definition of "sexual conduct" to cover the conduct shown in *Cuties*, Babin stretches those terms beyond their constitutional bounds and criminalizes otherwise protected speech—a fact Babin's counterparts have expressly recognized in other cases.

94.    That is true even of Babin's indictment in Cause No. 13,969. As applied here, because Babin knew that the actress was an adult at the time the scene was filmed—as Babin's First Indictment tacitly concedes and as Netflix expressly told

Babin shortly after getting indicted—Babin is trying to prosecute Netflix for *simulated* child pornography, which is plainly unconstitutional under *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240–45 (2002).

95.     Although these four indictments are actively pending in state court, Babin's bad-faith conduct alleged above—e.g., his utter and knowing lack of probable cause, his purposeful use of his prosecutorial discretion to file and dismiss charges to strip Netflix of its rights to seek redress—both permits and justifies this Court not only to maintain jurisdiction over Netflix's claims but also to enjoin Babin from pursuing the pending New Indictments.

96.     Netflix therefore seeks preliminary and permanent injunctive relief against Babin so that he does not and cannot prosecute Netflix under Section 43.25 for any charges relating in any way to Netflix's promotion of *Cuties*.

### COUNT IV
### VIOLATION OF NETFLIX'S FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983 FOR RETALIATING AGAINST NETFLIX'S EXERCISE OF ITS FIRST AMENDMENT RIGHTS OF FREE SPEECH AND TO PETITION THE GOVERNMENT

97.     Netflix incorporates by reference the allegations contained in Paragraphs 1 through XX as if fully set forth herein.

98.     Babin acted under color of state law, in bad faith, and in violation of Netflix's First Amendment rights when he retaliated against Netflix for exercising its First Amendment rights of free speech and to petition the government for redress.

99.     Babin indicted Netflix under Section 43.262 for promoting *Cuties* because he knew in September of 2020 that he lacked probable cause to pursue charges under any other statute, including Section 43.25. Those other statutes all required showings that Babin knew he could never make (e.g., proof of "sexual conduct" of a minor). Indeed, no reasonable lawyer who, like Babin, had watched *Cuties* would conclude that there is probable cause to indict Netflix for violating Section 43.25.

100.    With regard to the indictment at issue in Cause No. 13,969, Babin had actual knowledge, or was willfully ignorant of such knowledge, that he lacked any factual basis for the charges he obtained in that indictment and thus lacked any probable cause to seek or justify that indictment.

101.    Babin pursued all of the New Indictments despite his knowledge that the State in other cases had indicated or stipulated that *Cuties* did not offend either Section 43.25 or 43.262 (i.e., because *Cuties* was of serious public value), and that his decision to indict Netflix under "[Section 43.262] seems fraught with constitutional peril," according to the Texas District & County Attorney's Association.

102.    Despite all of this knowledge, Babin waited more than 500 days to bring new and frivolous charges under Section 43.25 and to dismiss the original charges under Section 43.262 and primarily, if not solely, for an illegitimate purpose: in relation against Netflix's exercise of its First Amendment right to continue streaming *Cuties* and of its right to petition the government for redress, which Netflix exercised when it filed its pretrial habeas petition and showed that Babin never had probable cause to indict under Section 43.262 and that Netflix was entitled to a final judgment that Section 43.262 was unconstitutional on its face.

103.    That Babin's purpose in seeking the four New Indictments was in bad faith and in retaliation for Netflix's exercise of its constitutional rights is evident in the facts pleaded above in this count and from several additional facts, including (1) Babin's refusal to respond to Netflix's habeas petition and justify or defend the First Indictment or Section 43.262's constitutionality; (2) Babin's unreasonable delay in dismissing the First Indictment and waiting to do so until after he could secure new charges that lacked probable cause and all with the intent to deprive Netflix of another forum to seek redress under the First Amendment against Section 43.262; (3) his demonstrated and illegitimate effort to violate Netflix's rights under Texas Code of Criminal Procedure 11.15 (i.e., to obtain habeas relief "without delay") so that

he could secretly convene a grand jury in the interim and obtain new indictments—also without probable cause—under a statute that Netflix admittedly could not challenge through pretrial habeas relief (Section 43.25).

104.   Netflix therefore seeks preliminary and permanent injunctive relief against Babin to enjoin him from retaliating against Netflix any further, such as by indicting Netflix on any further charges relating in any way to Netflix's promotion of *Cuties*.

## PRAYER

WHEREFORE PREMISES CONSIDERED, Netflix prays that the Court enter a judgment against Babin granting the following relief:

a.   A preliminary and permanent injunction against Babin from pursuing any pending indictment against Netflix or seeking to reindict Netflix for any charge related to *Cuties*;

b.   Any other relief, in law or in equity, to which Netflix may be entitled.

Date: <u>March 3, 2022</u>          Respectfully submitted,

<u>*/s/Joshua J. Bennett*</u>
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterarnett.com
Linda R. Stahl
Texas Bar No. 00798525
lstahl@carterarnett.com
Joshua J. Bennett
Texas Bar No. 24059444
jbennett@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expy, Suite 500
Dallas, Texas 75206
Telephone: 214-550-8188
Facsimile: 214-550-8185

and

David M. Prichard
State Bar No: 16317900
Direct Line: (210) 477-7401
E-mail: dprichard@prichardyoungllp.com
**PRICHARD YOUNG, L.L.P.**
10101 Reunion Place, Suite 600
San Antonio, Texas 78216
(210) 477-7400 – Telephone
(210) 477-7450 – Facsimile

**ATTORNEYS FOR PLAINTIFF**