**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| **NETFLIX, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 9:22-CV-031** |
| | § | |
| **LUCAS BABIN,** | § | |
| **Defendant.** | § | |

---

**DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT**

---

## I.    MOTION

Defendant Lucas Babin asserts that there are no genuine issues of material fact for trial and requests that this Court grant summary judgment in his favor pursuant to Federal Rule of Civil Procedure 56(b). In support of his motion, Babin relies on the following:

> **Exhibit 1:**    *Cuties* **(Defendant incorporates Exhibit 1 of Plaintiff's Complaint, rather than reproduce the exhibit for the purposes of this motion);**

> **Exhibit 2:**    **Tyler County Criminal District Attorney Policy Concerning Texas Penal Code Section 43.262, with business records affidavit (Bates numbered 001 – 002).**

## II.    STATEMENT OF THE CASE & ISSUES

Plaintiff Netflix, Inc., seeks to personally and permanently enjoin Lucas Babin, the elected Criminal District Attorney of Tyler County, Texas.[1] Netflix claims that Babin is "abusing his office and infringing on Netflix, Inc.'s constitutional rights" by pursuing criminal charges against Netflix for the latter's promotion of the film *Cuties* on its

---

[1]    Doc. 1 at 1.

streaming service.[2] Counts I and II are identically worded allegations that Babin has violated Netflix's Fifth and First Amendment rights, and seek to enjoin Babin from seeking any indictment against Netflix under Texas Penal Code Section 43.262.[3] Count III alleges that Babin has violated Netflix's First Amendment rights, and seeks to enjoin Babin from pursuing four existing indictments against Netflix for violations of Texas Penal Code Section 43.25.[4] Count IV alleges that Babin has violated Netflix's First Amendment rights, and seeks to enjoin Babin universally "from retaliating against Netflix any further, such as indicting Netflix on any further charges relating in any way to Netflix's promotion of *Cuties*."[5]

All claims are brought against Babin in his individual capacity, pursuant to 42 U.S.C. § 1983.

## III.    STATEMENT OF MATERIAL FACTS

Netflix began streaming *Cuties* in Texas on September 9, 2020.[6] Within the month the Grand Jury for Tyler County, Texas, returned an indictment against Netflix for promotion of lewd visual material depicting child [sic] pursuant to Texas Penal Code Section 43.262.[7] Section 43.262 provides in relevant part:

> A person commits an offense if the person knowingly possesses, accesses with intent to view, or promotes visual material that:

---

[2]    Id.

[3]    Id. at ¶¶ 74-90.

[4]    Id. at ¶¶ 91-96.

[5]    Id. at ¶¶ 97-104.

[6]    Id. at ¶ 17.

[7]    Id. at Exhibit 2.

(1) depicts the lewd exhibition of the genitals or pubic area of an unclothed, partially clothed, or clothed child who is younger than 18 years of age at the time the visual material was created;

(2) appeals to the prurient interest in sex; and

(3) has no serious literary, artistic, political, or scientific value.[8]

Netflix entered a plea of not guilty on October 23, 2020.[9] Between October 2020 and August 2021 the case did not advance, and neither the State nor Netflix did anything to prompt action.[10] While not material to disposition of this matter, the Court might take judicial notice that the criminal justice process in Texas generally ground to a halt during this period due to panic concerning COVID-19. Netflix's criminal case was set for docket call in August 2021, but was reset, by agreement, for February 2022.[11]

On October 26, 2021, Texas' First District Court of Appeals handed down a decision concerning a Harris County prosecution under Section 43.262. That decision, Ex parte Lowry,[12] struck down the "possession" portion of Section 43.262 for overbreadth in violation of the First Amendment.[13] The opinion was specifically limited to the "possessing" element of the statute, passing on the "accessing" or "promoting" elements.[14] Babin's prosecution of Netflix was mentioned in dicta, but not subject to the holding, and

---

[8]     TEX. PEN. CODE § 43.262(b).

[9]     Doc. 1 at ¶ 39.

[10]    Id. at ¶ 40.

[11]    Id. at ¶ 41.

[12]    639 S.W.3d 151 (Tex. App.—Houston [1st Dist.] 2021, pet. granted) (page numbering derived from 2021 Tex.App. LEXIS 8629).

[13]    Id. at *32.

[14]    Id. at *12-*13.

only to muse that persons *viewing* Netflix might be prosecuted under Section 43.262 due to the overbreadth of the *possession* element of the statute.[15] The Texas Court of Criminal Appeals granted the State's petition to review <u>Lowry</u> on March 2, 2022, unsettling the finality of the First District's ruling.[16] The matter is currently pending before the Court of Criminal Appeals.

Netflix confronted Babin with the <u>Lowry</u> decision and asked him to dismiss the Section 43.262 charge.[17] When Babin did not immediately comply, Netflix filed a petition for writ of habeas corpus on November 15, 2021 – 20 days after the <u>Lowry</u> decision.[18]

During its January 2022 term the Grand Jury for Tyler County, Texas, returned four new indictments against Netflix for sexual performance by a child, pursuant to Texas Penal Code Section 43.25(d).[19] Section 43.25(d) provides:

> A person commits an offense if, knowing the character and content of the material, he produces, directs, or promotes a performance that includes sexual conduct by a child younger than 18 years of age.

---

[15]  <u>Id.</u> at *31.

[16]  <u>Ex part Lowry</u>, No. PD-0887-21, 2022 Tex. Crim. App. LEXIS 143 (Tex. Crim. App. 2022).

[17]  Doc. 1 at ¶¶ 44-45 (Netflix represented to Babin then, as now to the Court, that <u>Lowry</u> deemed Section 43.262 "facially unconstitutional in substantially all of its applications." Doc. 1 at ¶ 42. As previously explained, this representation was, and is, an egregious misrepresentation of <u>Lowry</u>'s expressly limited holding.).

[18]  Id. at ¶ 46, Exhibit 5.

[19]  Id. at Exhibits 6-9.

Babin successfully moved to dismiss Netflix's previous indictment under Section 43.262, without prejudice, on March 2, 2022.[20] Babin, in his capacity as chief policymaker for felony prosecutions in Tyler County, Texas, executed a policy on March 15, 2022, barring prosecution of any offense under Section 43.262 in Tyler County unless and until (1) Section 43.262 is deemed facially constitutional; (2) the Lowry decision has otherwise been abrogated in favor of Section 43.262; or (3) Section 43.262 has been amended by the Texas Legislature.[21]

## IV.    ARGUMENT

### A.  Standards

#### 1.  Summary Judgment

Summary judgment should be granted when the moving party conclusively establishes that there is no genuine issue of material fact.[22] There is no issue for resolution at trial unless there is sufficient evidence favoring the nonmoving party to return a verdict for that party.[23] The moving party may satisfy its burden by negating the existence of an essential element of the nonmoving party's case.[24] Alternatively, if the moving party will not bear the burden of proof at trial on a particular issue, it may meet its initial burden

---

[20]    Id. at Exhibit 10.

[21]    Exhibit 2.

[22]    FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).

[23]    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

[24]    Celotex Corp., 477 U.S. at 325.

merely by pointing out the absence of evidence supporting that element of the nonmoving party's case.[25]

Once the moving party has carried its burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate.[26] The nonmoving party cannot discharge its burden by alleging mere legal conclusions or unsubstantiated assertions; it must present affirmative evidence in order to defeat a properly supported motion for summary judgment.[27]

### 2. Injunctive Relief

To obtain a permanent injunction a plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[28]

## B. Counts I & II (Indictment under Section 43.262)

### 1. Netflix's Claims are Moot

Generally, a defendant's voluntary cessation of a challenged practice does not deprive a federal court of power to determine the legality of the practice, even in cases

---

[25]   Id.; Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996); Transamerica Ins. Co. v. Avenall, 66 F.3d 715, 718-719 (5th Cir. 1995).

[26]   Exxon Corp. v. Baton Rouge Oil, 77 F.3d 850, 853 (5th Cir. 1996).

[27]   Anderson, 477 U.S. at 249-250; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[28]   eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

involving claims for injunctive relief.[29] This general rule is not absolute, but voluntary cessation moots a case "only if it is 'absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur.'"[30]

The general rule notwithstanding, the Fifth Circuit recognizes that government actors are different. "[C]ourts are justified in treating a voluntary *governmental* cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity."[31] Government actors acting in the scope of their official duties "are accorded a presumption of good faith because they are public servants."[32] Absent evidence to the contrary, it is "assume[d] that formally announced changes to official governmental policy are not mere litigation posturing."[33]

Recent Fifth Circuit precedent helpfully clarifies the difference between public defendants who properly moot claims by voluntary cessation, and those who do not. In Speech First, Inc. v. Fenves,[34] the President of the University of Texas failed to moot First Amendment challenges to university speech codes. The Fifth Circuit found that, despite the "solicitude" afforded to government actors, the University maintained the definitions

---

[29]    Meza v. Livingston, 607 F.3d 392, 399-400 (5th Cir. 2010) (internal quotes and citations omitted).

[30]    Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)).

[31]    Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009) (emphasis added).

[32]    Id.

[33]    Id.

[34]    979 F.3d 319 (5th Cir. 2020).

at the heart of the challenged codes, and "ha[d] not issued a controlling statement of future intention" not to reenact the codes and pursue enforcement.[35] While President Fenves averred to the Court that the University would not reenact the challenged codes, there was no evidence that Fenves controlled the University for that purpose.[36] Fenves also continued to defend the legality of the challenged codes, creating a logical implication that the cessation was no more than litigation posturing.[37]

In <u>Sossamon v. Lone Star State of Texas</u>, on the other hand, Texas Department of Criminal Justice (TDCJ) Executive Director Quarterman successfully demonstrated mootness.[38] Quarterman executed an affidavit demonstrating that he was the party responsible for enforcing the challenged TDCJ policy, and that the policy had been terminated agency-wide.[39] The Fifth Circuit found that Quarterman's controlling policy change obviated any concern for a whimsical resurrection of the challenged conduct, and made any claim of future harm "too speculative to avoid mooting the case."[40]

Babin, in his capacity as elected Criminal District Attorney of Tyler County, and chief policymaker of the office thereof, has executed a policy precluding any Tyler County prosecution under Section 43.262 unless and until constitutional concerns, including those

---

[35]   <u>Id.</u> at 328.

[36]   <u>Id.</u> at 328-29.

[37]   <u>Id.</u> at 329.

[38]   560 F.3d at 324-26.

[39]   <u>Id.</u> at 324-25.

[40]   <u>Id.</u> at 325.

raised by Netflix, are resolved.[41] In doing so, Babin joins Director Quarterman in making "absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur."[42] Babin undisputedly controls felony prosecution in Tyler County, and his policy makes any prospect of prosecution under Section 43.262, absent settled law establishing the constitutionality thereof, "too speculative to avoid mooting the case."[43] Counts I and II are moot, and should be dismissed.

### 2. State Law is Unsettled

Justice Ginsburg once wrote:

> In litigation generally, and in constitutional litigation most prominently, courts in the United States characteristically pause to ask: Is this conflict really necessary? When anticipatory relief is sought in federal court against a state statute, respect for the place of the States in our federal system calls for close consideration of that core question … [N]ormally this Court ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts.[44]

This consideration is particularly applicable in this case. Netflix asks this Court to declare Section 43.262 facially, and wholly, unconstitutional. This request is made in anticipation of ongoing proceedings in Texas' highest criminal court pertaining to an inapplicable portion of Section 43.262, and in the complete absence of a controlling state interpretation of the "meaning and effect" of the applicable, "promotion" portion of the statute.

---

[41]     Exhibit 2.

[42]     <u>Concentrated Phosphate</u>, 393 U.S. at 203.

[43]     <u>Sossamon</u>, 560 F.3d at 325.

[44]     <u>Arizonans for Off. Eng. v. Arizona</u>, 520 U.S. 43, 75 (1997).

Netflix implicitly concedes that the proper avenue to bring a constitutional challenge to Section 43.262 is a state petition for writ of habeas corpus, and that the only reason they appear before this Court is that there are no pending charges and no standing for a constitutional claim in state court.[45] It does not follow, however, that loss of standing in a proper court creates standing in an improper one. At the very least, "[t]o avert creating needless friction with a coequal sovereign in our federal system," this Court should defer to the Texas courts for final word on the constitutionality of Section 43.262.[46]

### 3. Netflix Fails to Demonstrate Entitlement to Relief

The above notwithstanding, Netflix fails to satisfy any of the four factors required to obtain an injunction against possible future enforcement of Section 43.262.[47]

Regarding the first factor, Netflix demonstrates only that it was indicted under the statute, and successfully convinced Babin to abandon the charge. Even if an indictment could plausibly be considered an "injury" in this context, it has already been repaired. Netflix fails to establish that it has suffered an irreparable injury.

Regarding the second factor, Netflix demonstrates only that available legal remedies to its charge under Section 43.262 are no longer necessary, because the injury no longer exists. In fact, Netflix no longer seeks a "remedy" at all, but prophylactic protection from law enforcement in general. Netflix fails to establish that remedies available at law are inadequate to compensate for its "injury."

---

[45]     Doc. 1 at ¶¶ 48, 64.

[46]     Whole Woman's Health v. Jackson, 23 F.4th 380, 2022 U.S. App. LEXIS 1255 at *11 (5th Cir. 2022).

[47]     eBay, 547 U.S. at 391.

Regarding the third factor, Netflix has made no effort to establish hardships of any kind, let alone balance such hardships between it and Babin, or show that a remedy in equity is warranted. Netflix fails to establish that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted.

Finally, Netflix's complaint is little more than a statement of indignation at being criminally charged for its product. The public will clearly be disserved by a federal court barring an elected prosecutor from ever charging a large corporation under what is currently a valid law, pursuant to an indictment lawfully handed down by an independent intermediary in the form of a Texas grand jury. The negative implications for federalism and equal protection are difficult to overstate. Netflix makes no effort to demonstrate how its request for exclusive, perpetual federal immunity to a valid Texas criminal law does not disserve the public. Netflix fails to establish its entitlement to a permanent injunction forever insulating it from charges under Section 43.262.

## C. Count III (Indictment under Section 43.25)

### 1. <u>Younger</u> Abstention

"[F]ederal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted."[48] The so-called <u>Younger</u> abstention doctrine is a basic rule of equity which acts to "prevent erosion of the role of the jury," "avoid duplication of legal proceedings," and, most importantly, protect "Our Federalism."[49]

---

[48]   <u>Tex. Ass'n of Bus. v. Earle</u>, 388 F.3d 515, 519 (5th Cir. 2004) (citing <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and <u>Samuels v. Mackell</u>, 401 U.S. 66 (1971)).

[49]   <u>Younger</u>, 401 U.S. at 43-44.

Younger applies, and a federal court must abstain, when (1) the dispute involves an "ongoing state judicial proceeding;" (2) an important state interest in the subject matter is implicated; and (3) the state proceedings afford an adequate opportunity to raise constitutional challenges.[50] Netflix makes no effort to dispute that the initial Younger test is met in this case, skipping straight to the doctrine's exceptions in Count III. For the record, however, Babin notes that (1) "criminal charges in state court" against Netflix are admittedly pending;[51] (2) the State of Texas has a strong interest in enforcing its criminal laws;[52] and (3) Texas admittedly affords an opportunity to raise constitutional challenges by state petitions for writ of habeas corpus.[53] All three Younger conditions are met in this case.

When the Younger test is met, a federal court may only enjoin a pending state criminal court proceeding if (1) the state proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal plaintiff seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it;" or (3) where other extraordinary circumstances threaten irreparable loss that is both great and immediate.[54] Netflix plausibly asserts only that Babin sought

---

[50]     Wightman v. Tex. Supreme Ct., 84 F.3d 188, 189 (5th Cir. 1996).

[51]     Doc. 1 at ¶ 73.

[52]     De Spain v. Johnston, 731 F.2d 1171, 1176 (5th Cir. 1984).

[53]     Doc. 1 at ¶ 48.

[54]     Gates v. Strain, 885 F.3d 874, 880 (5th Cir. 2018) (quoting Younger, 401 U.S. at 45).

indictments under 43.25 in bad faith, qualifying for the first exception to Younger abstention.[55]

Netflix's specific allegation of bad faith apparently takes two forms: that Babin pursues the four active indictments with "utter and knowing lack of probable cause," and that Babin has purposefully used his "prosecutorial discretion to file and dismiss charges to strip Netflix of its rights to redress."[56]

Regarding the former allegation, Netflix ignores a key fact: the Grand Jury. Netflix's allegation that Babin pursues the four indictments absent probable cause is false as a matter of law, because the Grand Jury has found probable cause for those four charges, and the Grand Jury – not Babin – indicted Netflix. The Fifth Circuit has long held that there is no constitutional violation by an official initiating criminal charges "if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party."[57] Netflix neither alleges nor proves any taint to the grand jury proceedings.[58]

While the independent intermediary doctrine is generally applied in a liability context, it has logical and necessary implications in this matter. If, as the doctrine holds,

---

[55]    See Doc. 1 at ¶¶ 91-96.

[56]    Id. at ¶ 95.

[57]    Hand v. Gary, 838 F.2d 1420, 1427-28 (5th Cir. 1988) (citing Rodriguez v. Ritchey, 556 F.2d 1185, 1194-95 (5th Cir. 1977)) (internal quote marks and original emphasis omitted).

[58]    See Id. at 1427; see also Craig v. Dallas Area RTA, 504 Fed. Appx. 328, 332-33 (5th Cir. 2012) (Unsubstantiated assertions of grand jury taint, or mere allegations of a personal vendetta without evidence, cannot defeat summary judgment).

*Cuties* was placed before a Texas grand jury, and that grand jury returned four indictments for violations of Section 43.25, that decision "breaks the chain of causation" for any bad-faith conduct on Babin's part. Netflix cannot establish that Babin has violated its constitutional rights by pursuing charges absent probable cause, and has therefore failed to state any claim for which relief may be granted. Moreover, and perversely, Netflix's requested relief would require Babin to compromise his oath of office by ignoring the Grand Jury, and to refuse prosecution of what has independently been found to be evidence of crimes sufficient to present to a petit jury. Babin respectfully asserts that fulfilling his sworn duties as elected District Attorney of Tyler County is not evidence of bad faith.

Regarding Netflix's second allegation of bad faith, "[t]he decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced."[59] "The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution."[60] In blunt terms, Netflix simply does not like being charged with crimes, and seeks to enlist the judiciary in a blatantly unconstitutional intrusion on the duties of an executive. Fundamental concepts of separation of powers cannot permit Netflix's requested relief on the mere allegation that one criminal charge has been abandoned in favor of another, for entirely speculated reasons.

---

[59]   United States v. Young, 231 F.Supp. 3d. 33, 40 (5th Cir. 2017) (quoting United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000)) (citing U.S. Const. Art. II, § 3).

[60]   Id.

14

Netflix also continues to ignore key, inconvenient facts. In dismissing the original indictment under Section 43.262, Babin did *exactly what Netflix requested* in the wake of the <u>Lowry</u> decision.[61] He simply did not accede on Netflix's preferred timeline or comply with its unspoken – perhaps obvious – desire not to be charged with anything else. These facts do not demonstrate Babin's bad faith; they demonstrate Netflix's hubris. Netflix equates the failure of a small-county prosecutor to conduct business exactly as Netflix desires with bad faith. No such equation demonstrates a constitutional violation, jurisdiction of this Court, or entitlement to injunctive relief.

Netflix has failed to demonstrate any exception to the <u>Younger</u> abstention doctrine. This Court must abstain from interference with the pending proceedings against Netflix under Section 43.25 and decline to issue an injunction based upon Count III.

### 2.  Constitutionality of 43.25 as applied to *Cuties*

Jurisdictional issues notwithstanding, Netflix contends that Section 43.25 is unconstitutional as applied to it, because *Cuties* cannot possibly be considered "sexual conduct" under settled law.[62] Netflix is plainly incorrect, suggesting an incredibly narrow definition of "sexual conduct" in this context that simply does not comport with Texas law.

The Texas Court of Criminal Appeals recognizes broad categories of factual scenarios which may be considered "sexual conduct," and specifically "lewd exhibition," within the meaning assigned by Section 43.25.[63] Such cases include instances where

---

[61]     Doc. 1 at ¶¶ 44-45.

[62]     Id. at ¶¶ 91-96.

[63]     <u>See</u> <u>State v. Bolles</u>, 541 S.W.3d 128 (Tex. Crim. App. 2017).

otherwise innocent images of children involved "lascivious focus" on their pubic regions, whether by camera focus, freeze-framing, or image manipulation.[64] Cases endorsed by the Court of Criminal Appeals in which "lewd exhibition" has been found also include "videotapes that focus on the genitals and pubic area of minor females … even though the body parts were covered by clothing."[65]

Babin also asks the Court to take note of Bexar County's recent prosecution of Lauro Eduardo Ruiz. Ruiz was charged with 10 counts under Section 43.25(d) for taking non-nude cellphone pictures depicting the area underneath his students' skirts.[66] No party and no court, to include the Court of Criminal Appeals, took issue with the charge itself, even though the facts involved clothed, unwitting children who were in no way acting or directed to act in a sexual manner.[67]

The indictments attached to Netflix's complaint as Exhibits 7, 8, and 9 involve victims whom Netflix does not dispute were under 18 years of age at the time *Cuties* was filmed. Babin respectfully, and reluctantly, asks the Court to view the following excerpts from *Cuties*:

---

[64] Id. at 136 (citing United States v. Brown, 579 F.3d 672, 681 (6th Cir. 2009), United States v. Johnson, 639 F.3d 433, 440-41 (8th Cir. 2011), and United States v. Horn, 187 F.3d 781, 790 (8th Cir. 1999)).

[65] Id. at 137 (citing United States v. Knox, 39 F.3d 733, 746 (3d Cir. 1992).

[66] State v. Ruiz, 535 S.W.3d 590 (Tex. App.—San Antonio 2017), judgment aff'd by State v. Ruiz, 577 S.W.3d 543 (Tex. Crim. App. 2019).

[67] Ruiz ultimately pled guilty to a lesser offense of obscenity under Texas Penal Code Section 43.23. See https://search.bexar.org/Case/CaseDetail?r=ea43eedf-6186-4a4a-9ef5-44a1266fadcb&st=l&l=ruiz&fn=lauro&m=&&p=1_2015CR4068+++++D1861680299100000

- Timestamp 42:49-44:18: Dance "practice" scene including multiple instances of children thrusting their hips, humping the ground, and touching each other's buttocks. Includes approximately 10 shots framed on children's buttocks or pubic areas while they perform;

- Timestamp 58:08-35: Child twerks and writhes her body suggestively for an increasingly pleased adult male, who continuously stares at the child's body. For several seconds the shot is framed exclusively on the child's buttocks as she performs;

- Timestamp 59:04-1:00:30: Dance routine featuring children squatting, spreading their legs, "popping" or shaking their buttocks, and thrusting their hips. Over a dozen shots are framed closely on the buttocks or crotches of the children while they perform. The scene ends with a child widely spreading her legs, displaying her genital area, while sultrily staring at the camera for several seconds;

- Timestamp 1:11:08-1:12:26: A wet, shaking child in panties is displayed. She bounces her breasts and "twerks" her buttocks throughout the scene. She progresses from a standing position to her knees, and then to her hands and knees, at which time the camera moves to focus on the child's rear, framing exclusively on the child's buttocks and genital area while she "twerks" and her panties ride up, exposing progressively more flesh.

- Timestamp 1:23:40-1:26:28: Dance routine featuring children squatting, spreading their legs, "popping" or shaking their buttocks, "twerking," thrusting their hips, "humping" the floor, sliding their hands over their own buttocks and genitals, sliding their hands over other children's buttocks, and provocatively sucking on their fingers. Most of the scene is framed closely on the buttocks or genitals of the children, who are scantily clad in skintight outfits. Many audience members react in disgust, while a young male observer is visibly pleased. The scene ends with the main character breaking down in tears and running away.

Current precedent in Texas law makes absolutely clear that charging Netflix under Section 43.25 for the admittedly underage images depicted in *Cuties* is at the very least not constitutionally forbidden. The facts leading to Netflix's indictments comport with cases endorsed by the Texas Court of Criminal Appeals in defining "sexual conduct" in this

context, and a Texas jury is entitled to determine if those facts warrant a criminal conviction.

Focusing specifically on Lauro Ruiz, or any other private individual creating content featuring sexually sensitive body parts of children, the case against Netflix certainly presents factual distinctions. Unlike Ruiz' case, the children in *Cuties* were instructed, by adults, to wear provocative clothing or, in one particular scene, panties. They were instructed, by adults, to spread their legs, grind, writhe, bounce, "pop," "twerk," and hump their bodies for the camera. Adults positioned and zoomed cameras to focus on the children's buttocks and pubic areas *while* instructing the children to perform these acts. These distinctions, however, indicate that the charges against Netflix are more appropriate, not less, and certainly remove them from the realm of unconstitutionality.

Regarding the indictment attached to Netflix's complaint as Exhibit 6, Netflix asserts that it is unconstitutional as applied because Babin allegedly knows the alleged victim was an adult at the time the scene was filmed.[68] Netflix offers "proof" of the relevant actress's age in Exhibit 4 of the complaint. As the Court can see, however, this "proof" is merely an unfounded information sheet, presumably created for Netflix's internal purposes. This mostly holographic document obviously would not be accepted by any competent authority as proof of age. Netflix does not allege or prove that it has supplied any competent proof of age for this actress, such government-issued documentation, to Babin or anyone else. The actress depicted in *Cuties*, meanwhile, plausibly appears to be underage, and is featured in a film specifically about underage girls.

---

[68]     Doc. 1 at ¶ 94 (the alleged victim's breast is exposed at Timestamp 28:00).

Babin also notes that this alleged victim is billed as a "Sweety Swaag" dancer. The credits for *Cuties* lists the actresses playing the "Sweety Swaag" dancers as Canelle Brival, Paloma, Evarista, and Arasian.[69] None of these names appear on the "proof" Netflix has provided to purportedly demonstrate the age of the alleged victim.[70]

Netflix fails to establish that its indictments under 43.25 are unconstitutional as applied.

### 3.   Netflix Fails to Demonstrate Entitlement to Relief

The above notwithstanding, Netflix fails to satisfy any of the four factors required to obtain an injunction against possible future enforcement of Section 43.25.[71]

Regarding the first factor, Netflix fails to explain any injury beyond its unhappiness with being subject to the criminal justice process.

Regarding the second factor, Netflix fails to explain why state avenues such as habeas corpus and jury trials are inadequate to compensate for its "injury."

Regarding the third factor, Netflix again has made no effort to establish hardships of any kind, let alone balance such hardships between it and Babin, or show that a remedy in equity is warranted.

Finally, again, Netflix makes no effort to demonstrate how its request for exclusive, perpetual federal immunity to a valid Texas criminal law does not disserve the public.

---

[69]     Exhibit 1 at Timestamp 1:32:16.

[70]     Doc. 1 at Exhibit 6.

[71]     eBay, 547 U.S. at 391.

Netflix fails to establish its entitlement to a permanent injunction forever insulating it from charges under Section 43.25.

### D.  Count IV (Any Future Charge)

Count IV is especially troublesome, because it fails even to present this Court with a case or controversy. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."[72] Netflix "lacks standing to seek an injunction against future prosecution for the same conduct because [it] alleges no facts indicating that such prosecution is likely, or even threatened."[73] Netflix's ill-founded desire for perpetual, prophylactic protection against "any further charges" ices a complaint that is remarkable only for its brazenness. Count IV must be dismissed.

## V.    PRAYER

The charges Lucas Babin has pursued against Netflix would be uncontroversial had they been filed against an average criminal defendant. Had the scenes in *Cuties* been filmed on a smartphone, in a hotel or bedroom, and distributed on private message boards, it is difficult to imagine that this case would ever have appeared on this Court's docket. What sets this case apart is the criminal defendant's ubiquity, wealth, and self-regard. These distinctions, however, do not confer novel constitutional rights or special immunity to Texas criminal law. Lucas Babin respectfully requests that this Court grant him summary judgment, and that all claims in this matter be dismissed with prejudice.

---

[72]     O'Shea v. Littleton, 414 U.S. 488, 495 (1974).

[73]     Humphreys v. City of Ganado, 467 Fed. Appx 252, 257 (5th Cir. 2012).

**LUCAS BABIN**
**CRIMINAL DISTRICT ATTORNEY**
Tyler County, Texas
100 West Bluff, Courthouse Annex
Woodville, Texas  75979
Ph:  409-283-8136
Fx:  409-283-6128
l.babin@co.tyler.tx.us

*/s/ CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Special Prosecutor for Tyler County

Assistant Attorney General
Attorney-In-Charge
State Bar No. 24065628

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2157 (Phone No.)
(512) 370-9314 (Fax No.)

## CERTIFICATE OF SERVICE

I, **CHRISTOPHER LEE LINDSEY**, do hereby certify that a true and correct copy of the foregoing has been served on all parties by the Court's electronic noticing system, on this the 10th day of April, 2022.

*/s/CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Special Prosecutor for Tyler County