IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| NETFLIX, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:22-CV-00031 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| LUCAS BABIN, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING NETFLIX INC'S EMERGENCY MOTION TO OBTAIN GRAND JURY DISCOVERY [DKT. 24], GRANTING OPPOSED RULE 56(d) MOTION TO CONTINUE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. 25], DENYING AS MOOT DEFENDANT, LUCAS BABIN'S MOTION FOR SUMMARY JUDGMENT [DKT. 21] AND DENYING AS MOOT PLAINTIFF'S OPPOSED MOTION FOR EXPEDITED BRIEFING ON RULE 56(d) MOTION [DKT. 26]**

The matters before the Court are the Defendant, LUCAS BABIN's *Motion for Summary Judgment* [Dkt. 21], and the Plaintiff, NETFLIX INC's *Emergency Motion to Obtain Grand Jury Discovery* [Dkt. 24], *Opposed Rule 56(d) Motion to Continue Defendant's Motion for Summary Judgment* [Dkt. 25], and *Opposed Motion for Expedited Briefing on Rule 56(d) Motion* [Dkt. 26].[1]

## BACKGROUND[2]

Netflix alleges that Tyler County's District Attorney, Lucas Babin, is "abusing his office" through a "singular and bad-faith effort" to maliciously prosecute Netflix in violation of the United States Constitution and in retaliation against Netflix for exercising its First Amendment rights. [Dkt. 1 at 1–2]. Babin initially charged Netflix in 2020 under TEX. PENAL CODE § 43.262. [Dkt.

---

[1] As a preliminary matter, Babin's *Motion for Summary Judgment* [Dkt. 21] has been rendered **MOOT**, because he later filed an *Amended Motion for Summary Judgment* [Dkt. 22], which did not "specifically refer to, adopt, or incorporate by reference" the earlier motion, and thereby "supersedes" it and renders it "of no legal effect." *See Stewart v. City of Houston Police Dep't*, 372 Fed. App'x 475, 476 (5th Cir. 2010) (cleaned up). Netflix's *Opposed Motion for Expedited Briefing on Rule 56(d) Motion* [Dkt. 26] has also been rendered **MOOT** because Babin responded to both of Netflix's motions before the April 21, 2022 hearing. Both pending motions are thereby **DENIED** as **MOOT**.

[2] This Section only includes those facts relevant to the present discovery dispute.

24 at 2]. This was not done quietly. Babin courted media attention by emphasizing his integral role in securing an indictment. *Id.*

On October 26, 2021, in the case of *Ex Parte Lowry*, No. 01-20-00858-CR, 2021 WL 4953918, at *9–12 (Tex. App.—Houston [1st Dist.] Oct. 26, 2021), the First District Court of Appeals held that Section 43.262 was facially unconstitutional. *Id.* at 3. Notably, the appellate court specifically referenced Babin's prosecution of Netflix as evidence of the statute's overbreadth. *Id.*

In light of the *Lowry* decision, Netflix filed a state pre-trial habeas petition, raising a facial challenge against Section 43.262 under the First and Fifth Amendments. *Id.* at 4. Then, in what Netflix alleges was another act of "gamesmanship," Babin sought a 120-day delay in Netflix's hearing on the habeas action. *Id.* But in the interim, he initiated new grand jury proceedings to obtain additional indictments against Netflix under Section 43.25, which allowed him to 'drop' the charge under Section 43.262. *Id.* When it became clear that Babin had outmaneuvered Netflix, using the delay to bolster his "bad-faith" prosecution and to shut down any avenues for pre-trial relief in the state system, Netflix turned to the federal courts. *Id.*

On March 3, 2022, Netflix filed a complaint seeking injunctive relief against Babin. [Dkt. 1]. At a hearing held the next day, the Parties agreed to stay the criminal proceedings in Tyler County until after a decision had been made on Netflix's request for a preliminary or permanent injunction. [Dkt. 13]. About a month later, Babin filed a motion for summary judgment, asserting as an affirmative defense that the grand jury constitutes an "independent intermediary" that severs the causal chain between any alleged "bad faith-conduct" on his part and the injunctive relief that Netflix seeks. [Dkt. 22 at 13–14].

Netflix contends, however, that the "independent intermediary" defense is only effective when the underlying proceedings are *untainted*; when the grand jury's independence or

impartiality cannot be called into question, *United States v. Williams*, 504 U.S. 36, 47 (1992); when a prosecutor has not "seriously misstated the applicable law," *United States v. Peralta*, 763 F. Supp. 14, 19–21 (S.D.N.Y. 1991); and when "*all* the facts [were] presented to the grand jury," *Hand v. Gary*, 838 F.2d 1420, 1427–28 (5th Cir. 1988) (emphasis original). [Dkt. 24 at 8–9].

Accordingly, Netflix has filed an *Emergency Motion to Obtain Grand Jury Discovery*, seeking the disclosure of evidence and testimony presented to the grand jury. *Id.* at 11. To be clear, Netflix is *not* seeking to depose any grand jurors or grand jury witnesses. *Id.* Its requests are focused on uncovering whether Babin properly presented "*all* the facts" and "applicable law" to the grand jury. *Hand*, 838 F.2d at 1427–28 (emphasis original); *Peralta*, 763 F. Supp. at 19–21. Alongside that motion, Netflix has filed an *Opposed Rule 56(d) Motion to Continue Defendant's Motion for Summary Judgment*, requesting a stay of "all proceedings on Babin's summary judgment motion until after the June 14 hearing and the necessary discovery is completed." [Dkt. 25 at 2].

## ANALYTICAL FRAMEWORK

The original purpose of the Federal Rules of Civil Procedure was to ensure that "civil trials in the federal courts no longer need to be carried on in the dark." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Thus, in addition to being "construed to secure the just, speedy, and inexpensive determination of every action," the rules must also be "accorded a broad and liberal treatment to effect their purpose" of illuminating the truth. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). This is why the Eastern District has traditionally favored "broad discovery rules." *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, No. 4:21-CV-00011, 2021 WL 2662178, at *3 (E.D. Tex. June 29, 2021). Under Rule 26, a party is entitled to discover "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).

## LAW & APPLICATION

**I.      Netflix's Emergency Motion to Obtain Grand Jury Discovery [Dkt. 24].**

Since the seventeenth century, grand jury proceedings have traditionally been kept under lock and key. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 n.9 (1979) (citing Richard Calkins, *Grand Jury Secrecy*, 63 MICH. L. REV. 455, 457 (1965)). Even so, as early as the nineteenth century, American courts realized that:

> When an indictment is returned, and the defendant arrested and placed upon trial, neither statutory nor common law reasons for secrecy can apply. There can be no reason, then, why evidence given before a grand jury should not be made known, and proved, if the ends of justice require it. A contrary course would tend to defeat, instead of promote justice, and be directly in opposition to the tendency of the age, which is to enlarge, rather than to contract, the source of evidence.

*Bressler v. People*, 117 Ill. 422 (Ill. 1886).[3] In a similar vein, the United States Supreme Court has required that criminal trials be predicated upon indictments returned by an "*unbiased* grand jury." *Costello v. United States*, 350 U.S. 359, 363 (1956) (emphasis added).

Thus, for almost a century now, the Supreme Court has placed its stamp of approval upon the practice of using grand jury transcripts in *criminal* cases "to impeach a witness, to refresh his recollection, [or] test his credibility," because these are often presumed to be "cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly." *See Socony-Vacuum Oil Co. v. United States*, 310 U.S. 150, 233 (1940); *United States v. Procter &*

---

[3] *See also Low's Case*, 4 Me. 439, 444 (Me. 1827) (speaking on the tradition of grand jury secrecy: "there is, and always has been, and from the necessity of the case must be, a power in the court to vacate, or cause to be amended, [an indictment] which has been erroneously or falsely made, by inadvertency or otherwise, [and there is] no doubt that the court may exercise this power at any time, according to their discretion; but unquestionably while a criminal prosecution, or a civil suit, is yet in progress, and has not finally terminated. . . . is the judicial power so defective, that [an] error must remain without correction? If so, the life of a citizen may be brought into jeopardy, in violation of both his legal and constitutional rights, under the pretence of necessary adherence to the letter of a technical rule."); *People v. Hulbut*, 4 Denio 133, 135–36 (N.Y. Sup. Ct. 1847) ("Grand jurors are sworn to secrecy; and, as a general rule, what takes place before them is privileged from disclosure. . . . But when the ends of justice require it, [an indictment] may be set aside on motion; and when set aside that is an end to it."); *Rothschild v. State*, 7 Tex. Ct. App. 519, 539 (Tex. Ct. App. 1880) (explaining that a collateral attack on grand jury proceedings, which were alleged to have been tainted by a county attorney's exertion of improper influence, did not require "strictness or technicality of pleading," because "such a fact, if it exist[ed]" could only be demonstrated "by proof *dehors* the record"; and accordingly, "[w]hile not a perfect pleading, it presented matter sufficient to require the court to *hear the proffered evidence* if in fact it existed, and to set aside the indictment promptly if the truth of the averment was established.") (emphasis added).

*Gamble Co.*, 356 U.S. 677, 683 (1958); *Dennis v. United States*, 384 U.S. 855, 870 (1966).[4]

Furthermore, ever since the *Douglas Oil* decision in 1979,[5] it is clear that the vault of secrecy "may be broken" in *civil* cases when a party can demonstrate a "particularized need" for the disclosure of grand jury materials:

> Parties seeking grand jury transcripts under [FED. R. CRIM. P.] 6 (e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Douglas Oil Co.*, 441 U.S. at 218, 222; *see also Allis-Chalmers Mfg. Co. v. Ft. Pierce*, 323 F.2d 233, 241 (5th Cir. 1963) ("[w]e do not think it can be said that . . . justice will never require disclosure to a civil plaintiff"). And indeed, when the requisite showing has been made, federal district courts within the Fifth Circuit have ordered the disclosure of grand jury materials in a wide variety of civil matters.[6] The same is true of federal district courts in the other twelve judicial circuits.[7] Texas courts apply the same "particularized need" standard, *Sanchez v. Gomez*, No. EP-

---

[4] *But see In re Grand Jury Testimony*, 832 F.2d 60, 63 (5th Cir. 1987) ("Impeachment and refreshment of recollection frequently are cited as reasons for release of grand jury testimony, and the Supreme Court and the Fifth Circuit have held that the need to impeach or refresh recollection is a valid particular need. [However, the] use of grand jury testimony to impeach or to refresh recollection must be real; bald assertions of such need are not sufficient").

[5] Although *Procter & Gamble* was a civil case, it provided little guidance on what sort of showing was needed to overcome the "particularized need" threshold. *Procter & Gamble*'s lasting contribution to American jurisprudence is the platitude that mere "delay and substantial costs" fall short of demonstrating how "a defense would be greatly prejudiced" or that "an injustice would be done." *Procter & Gamble*, 356 U.S. 677, 682. By contrast, *Douglas Oil* articulated at least two useful touchstones. First, it provided an administrable test. *Douglas Oil*, 441 U.S. at 222. It also clawed back *Dennis*'s suggestion that a 'particularized need' showing is not necessary "when the grand jury whose transcripts are sought has concluded its operations." *Id.* Instead, *Douglas Oil* instructs district courts that "in considering the effects of disclosure on grand jury proceedings, the courts must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries." *Id.* At the same time, however, *Douglas Oil* hedges its position, suggesting that "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id.* at 223.

[6] *LTV Educ. Sys., Inc. v. Bell*, 862 F.2d 1168 (5th Cir. 1989) (breach of contract); *Simpson v. Hines*, 729 F. Supp. 526 (E.D. Tex. 1989) (civil rights action); *In re Catfish Antitrust Litig.*, 164 F.R.D. 191 (N.D. Miss. 1995) (antitrust); *Ramirez v. Abreo*, No. 5:09-CV-190-C, 2010 WL 11470102 (N.D. Tex. 2010) (malicious prosecution and defamation); *Grace v. Cain*, No. 02-3818, 2015 WL 160369 (E.D. La. 2015) (habeas corpus); *Sanchez v. Gomez*, No. EP-17-CV-00133-PRM, 2019 WL 12536398 (W.D. Tex. 2019) (unlawful entry and excessive force).

[7] *See e.g.*, *In re Request for Access to Grand Jury Materials*, 833 F.2d 1438 (11th Cir. 1987) (congressional impeachment trial); *In re Grand Jury Proceedings Relative to Perl*, 838 F.2d 304, 307–08 (8th Cir. 1988) (legal

17-CV-00133-PRM, 2019 WL 12536398 (W.D. Tex. 2019) (citing TEX. CODE CRIM. P. art. 20.02(d); *Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004)), and often find the standard met when an element of a party's claim or defense is contingent upon the production of grand jury materials. For example, when a civil action rests upon an allegation of prosecutorial misconduct, "grand jury or other testimony" is not only "discoverable," but "admissible." *Euresti v. Valdez*, 769 S.W.2d 575, 578–79 (Tex. App.—Corpus Christi 1989, no writ).

### A. Babin's Extraneous Arguments.

In his briefing and at the hearing on these matters, Babin did not dispute that Netflix would be able to demonstrate a particularized need for the materials it seeks. Instead, he relied on the two following, *sui generis*, arguments. First, a contention that it is Netflix's burden to disprove his independent intermediary affirmative defense by showing that the grand jury proceedings were tainted. And second, an averment that he is procedurally barred, under TEX. CODE CRIM. P. art. 20A.205, from disclosing any grand jury materials.

#### 1. *The burden of disproving an affirmative defense.*

Turning to Babin's first argument. He cites *Craig v. Dallas Area RTA*, 504 Fed. App'x 328, 332 (5th Cir. 2012) for the proposition that it is a plaintiff's burden to "affirmatively show" evidence of grand jury impropriety to overcome the presumption that an "independent intermediary breaks the chain of causation." [Dkt. 27 at 2].

In addition to being a red herring,[8] this is a self-defeating proposition. For starters, in *Hand*

---

malpractice) (appellees assertion that grand jury materials were needed to "establish their claims for total fee forfeiture and for treble damages based upon the theory of fraud and deceit" showed a "particularized need," because their case "would be significantly hampered without material").

[8] Assuming, *arguendo*, that it is indeed Netflix's burden to disprove Babin's inchoate affirmative defense, that still would not require a negative answer to the question of whether the "evidence presented to the grand jury" should be produced. *Cf. Craig*, 504 Fed. App'x at 332–33. Rather, under the most basic norms of equity, that point would seem to weigh *in favor* of producing the evidence. That said, this Court simply cannot allow Babin's assertion to stand. Under the "long-established common-law rule," it is clear that "the burden of proving affirmative defenses— indeed, all circumstances of justification, excuse or alleviation—rest on the defendant." *Dixon v. United States*, 548 U.S. 1, 8–9, 17 (2006) (cleaned up); *see also* BLACK'S LAW DICTIONARY (10th ed.) ("**affirmative defense.** (1837) A

*v. Gary*, 838 F.2d 1420 (5th Cir. 1982), the Fifth Circuit instructed that when a prosecutor tries to deploy the independent intermediary defense:

> The chain of causation is broken only where *all* the facts are presented to the grand jury, where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information . . . *Any misdirection* of . . . the grand jury by *omission or commission* perpetuates the taint of the original official behavior.

*Hand*, 838 F.2d at 1427–28 (emphasis added). *Hand* turned on the critical finding that "no relevant information was withheld from the grand jury." *Id.* at 1427, 1428. Such a finding could not have been made if the "information" presented to the grand jury were never produced. And even in *Craig*, the Fifth Circuit explained that the plaintiff had failed to demonstrate that the "evidence presented to the grand jury was *improperly* presented" or that the "evidence could have misled jurors in making an objective judgment." *Craig*, 504 Fed. App'x at 332–33 (cleaned up) (emphasis original). As in *Hand*, such a showing could manifestly not have been made unless the plaintiff had access to that evidence.

Quite troublingly, Babin appears to be arguing that the crude expedient of merely saying that grand jury proceedings are untainted should suffice to insulate a state prosecutor from scrutiny—even when he claims the protection of an affirmative defense that turns on the truth or

---

defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true, The *defendant* bears the burden of proving an affirmative defense.") (emphasis added). As Netflix correctly noted during the hearing, one possible (but disputed) exception to this rule is the qualified immunity defense, with respect to which some courts have held that the burden of negation rests with the plaintiff. *Compare Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) ("[o]nce a defendant asserts the qualified immunity defense, the plaintiff bears the burden of negating qualified immunity") (cleaned up) *and Sparing v. Village of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001) ("although qualified immunity is an affirmative defense, the burden of defeating an assertion of qualified immunity rests with the plaintiff") *with Diggs v. City of New York*, No. 17 Civ. 1127 (VEC) (HBP), 2019 WL 6833376 (S.D.N.Y. 2019) (Pitman, M.J.) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("[s]ince qualified immunity is a defense, the burden of pleading it rests with the *defendant*.") (emphasis added), *Southerland v. City of New York*, 680 F.3d 127, 148 (2d Cir. 2011) ("qualified immunity" is "a defense on which [the defendant] has the burden of proof") *and Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263–64 (11th Cir. 2004) ("[w]hen a government official . . . seek[s] summary judgment on qualified immunity grounds . . . it is [his] burden . . . to make this showing"). However, an assertion of qualified immunity would be utterly meaningless in this civil action, because "[n]either absolute nor qualified immunity" shield government officials from "suits for injunctive or declaratory relief." *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995).

falsity of that very assertion. Doubtless, it need not be explained that such a notion is alien to our most basic commitments to justice and fairness in legal proceedings. As Justice Traynor states, in stentorian tones, a grand jury "is no Star Chamber tribunal empowered to return arbitrary indictments unsupported by any evidence." *Greenberg v. Superior Court of San Francisco*, 121 P.2d 713, 715 (Cal. 1942). This Court will not herald a return to those dark days by allowing Netflix to be arbitrarily deprived of the opportunity to contest the manner in which Babin pursued his five indictments, especially since he has placed that issue squarely into contention by raising the independent intermediary defense.

In conclusion, Babin is certainly free to *say* that he holds the independent intermediary card. He may even go so far as to inform his opponents that he *believes* they should fold. At the very minimum, however, the American system of justice requires him to show his hand when Netflix calls his bluff.

### 2. *The procedural irrelevance of Tex. Code. Crim. P. art. 20A.205.*

The Court turns next to TEX. CODE CRIM. P. art. 20A.205(b), which provides that petitions for the disclosure of grand jury information "must be filed in the district court in which the case is pending." *Id.* For his second argument, Babin contends that this language shackles his hands—so much so, that it would prevent him from complying with any future orders from this Court to disclose the requested grand jury materials. Because, he explains, subsection 205(b)'s clause "the district court in which the case is pending" *clearly* means that such petitions be filed in (a) the state district court that (b) presided over the grand jury proceedings, and (c) in which the criminal case is pending. [Dkt. 27 at 3].

To the contrary, and as an initial matter, *Douglas Oil* has already established that "the court in which the grand jury sat" is *not* necessarily suited to the task of deciding "whether a request for disclosure under Rule 6(e) should be granted." *Douglas Oil*, 441 U.S. at 226. This is because such

8

judges "will have no firsthand knowledge of the litigation in which the transcripts are allegedly needed, and no practical means by which such knowledge can be obtained." *Id.* Accordingly, when ancillary litigation passes a certain threshold of complexity, the Supreme Court holds, another court "*cannot* weigh in an informed manner the need for disclosure against the need for maintaining grand jury secrecy." *Id.* If *Douglas Oil* is so harsh to sister federal courts, however, then a state court would certainly struggle to overcome its scrutiny.

Moreover, and in stark contrast with Babin's assertion, the plain text of Article 20A.205 does *not* so sharply limit the types of courts in which petitions for disclosure may be filed. For instance, subsection 205(a) indicates only that a litigant may petition "*a* court" for the disclosure of grand jury materials for matters that are "preliminary to" or that have some "connection" with "*a* judicial proceeding." TEX. CODE. CRIM. P. art. 20A.205(a) (emphasis added). Similarly, subsection 205(b) only provides that a petition must be filed "in the *district court* in which *the case* is pending." *Id.* art. 20A.205(b) (emphasis added). But critically, there is no further statutory guidance on the precise meaning of the terms "court" and "case."

This matters, because Article 20A.205 was enacted in 2019 and courts interpreting Texas statutes are instructed to "presume the Legislature knows the law and drafts statutes with care, choosing each word for a purpose and purposefully omitting all other words." *In re Tex. Educ. Agency*, 619 S.W.3d 679, 687–88 (Tex. Mar. 19, 2021). Accordingly, this Court must presume that the Texas Legislature was aware of cases like *Euresti v. Valdez*, 769 S.W.2d 575 (Tex. App.— Corpus Christi 1989), which held that "grand jury testimony can . . . be discovered in a *civil* suit." *Id.* at 579 (emphasis added). But even so, Article 20A.205 does not specify that petitions for disclosure may only be filed in courts in which *criminal* cases are pending.

Similarly, this Court must presume that the Texas Legislature was aware of cases like *Simpson v. Hines*, No. B-88-00316-CA, 729 F. Supp. 526 (E.D. Tex. 1989) (Cobb, J.), *Ramirez v.*

9

*Abreo*, No. 5:09-CV-190-C, 2010 WL 11470102 (N.D. Tex. 2010) (Cummings, J.), and *Sanchez v. Gomez*, No. EP-17-CV-00133-PRM, 2019 WL 12536398 (W.D. Tex. 2019) (Castaneda, M.J.), where federal judges disregarded 20A.205 and its predecessor, and instead ordered the disclosure of state grand jury materials under FED. R. CRIM. P. 6(e). But regardless, Article 20A.205 does not specify that a petition for disclosure may only be filed with a *state* district court.[9]

More to the point, several federal district courts have already considered and rejected Babin's line of argument. *See, e.g.*, *Sanchez*, 2019 WL 12536398, at *1–2. Their rationale is that "where a plaintiff's claim arises under federal law, unless state law supplies the rule of decision for an element of a claim or defense, federal common law is the source of any privileges afforded to grand jury proceedings." *Id.* at *2 (citing *American Civil Liberties Union v. Finch*, 638 F.2d 1336, 1342–43 (5th Cir. 1981)).[10] Thus, Texas district courts hold that regardless of the "potential difficulties" a prosecutor may face with a state court, so long as a party can show a "particularized need," FED. R. CRIM. P. 6(e) will permit the production of state grand jury materials. *Sanchez*, 2019 WL 12536398, at *3; *see also Simpson*, 729 F. Supp. at 527 (same); *Ramirez*, 2010 WL 11470102, at *2 (same); *cf. Johnson v. Lee*, No. 07-3596, 2009 WL 24065, at *3–4 (E.D. La. 2009) (Knowles,

---

[9] Even more notably, Babin's cramped reading of 20A.205(b) would also frustrate a typical and necessary application of the statute in cases involving allegations of malicious prosecution. *See, e.g.*, *Lesher v. Coyel*, 435 S.W.3d 423 (Tex. App.—Dallas 2014). While *Lesher v. Coyel* involved a predecessor of 20A.205(b), the relevant language is identical. *See* TEX. CODE CRIM. P. 20.02(e) [repealed] ("A petition for disclosure . . . must be filed in the district court in which the case is pending."). In such cases, often by practical necessity, the plaintiffs are first "acquitted of the charges against them" before initiating a subsequent suit "for malicious prosecution." *Lesher*, 435 S.W.3d at 426. In such circumstances, there is no longer a criminal case pending against the plaintiffs. The only court in which a "case is pending," in accordance with the language of subsection 205(b), is the court that is presiding over the *civil* action. A closer reading of *Lesher*'s facts further undercuts Babin's position. There, the prosecutor "presented the case to a grand jury in Red River County." *Id.* at 425. But when the plaintiffs petitioned for disclosure of the grand jury proceedings, they did so in the 416th Judicial District Court in Collin County, which *granted* the plaintiffs' motion for the disclosure of grand jury recordings and transcripts. *Id.* at 430 n.3. It is of great interest, therefore, that neither the Dallas Court of Appeals nor the Texas Supreme Court took issue with the trial court's order, which (according to Babin) violated the statute. *See id.*, pet. den'd, No. 14-0690, 2015 Tex. LEXIS 370 (Tex. 2015).

[10] *See also In re Disclosure of Evidence Taken before Special Grand Jury etc.*, 650 F.2d 599, 601 (5th Cir. 1981) ("Fed. R. Crim. P. 6(e)(3)(C)(i) authorizes disclosures of matters occurring before a grand jury when so directed by a court preliminary to or in connection with a judicial proceeding. Disclosures to a *state grand jury* are encompassed by this Rule.") (emphasis added).

10

III, M.J.) (same); *Shields v. Twiss*, 389 F.3d 142, 147–48 (5th Cir. 2004) (same).[11]

That said, if Netflix were truly incapable of demonstrating a "particularized need" for the grand jury materials it seeks, and if Babin were ordered to disclose those materials regardless, then perhaps his argument that his compliance would violate state law would have greater merit. *See, e.g.*, *Stern v. State ex rel. Ansel*, 869 S.W.2d 614, 628–29 (Tex. App.—Houston [14th Dist.] 1994) (affirming the removal of a district attorney from office after he publicly released transcripts of grand jury testimony and could not show a "particularized need" for doing so). However, aside from the prior two contentions (which have now been dispensed with) Babin has failed to muster even the slightest argument to counter Netflix's position that there is a "particularized need" for the state grand jury materials.

### B. Particularized Need.

As a reminder, to establish a "particularized need" under FED. R. CRIM. P. 6(e), a party must show that: (1) the material they seek is needed to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) their request is structured to cover only material so needed. *Douglas Oil Co.*, 441 U.S. at 218, 222.

#### 1. *The avoidance of possible injustice.*

Netflix suggests two reasons for why the production of the grand jury materials is necessary

---

[11] At this juncture, the Court must address *Shields v. Twiss*, which Babin cites for the highly dubious proposition that a state prosecutor, sued in federal court for withholding evidence from or otherwise misleading a grand jury, can just sit on his hands and frustrate a plaintiff's attempts to show a "particularized need" for the discovery of grand jury materials. Babin misses the point. In *Shields*, the plaintiff had already been provided an opportunity to depose the prosecutor about his *presentation of evidence* to the grand jury, and to depose a witness about his *testimony* at the grand jury proceedings. *See Robinson v. Twiss*, No. SA-01-CA-0289-RF, 2003 WL 23879705, at *4 (W.D. Tex. 2003) (Ferguson, J.). It was against that particular evidentiary background that the Fifth Circuit noted the plaintiff's continued failure to "put forward any evidence whatsoever" that the prosecutor had withheld information from the grand jury. *Shields v. Twiss*, 389 F.3d 142, 148 (5th Cir. 2004). Notwithstanding those underlying problems, *Shields* also defeats Babin's contention that Rule 6(e) does not apply to disputes over the disclosure of state grand jury materials. There, the Fifth Circuit unambiguously assessed the plaintiff's attempt to discover state grand jury materials and depose grand jury members under the *federal* "particularized need" standard of Rule 6(e). *Shields*, 389 F.3d at 147–48. This, even though the Court was obviously aware of the existence of TEX. CODE CRIM. P. art. 20.02(d), a predecessor of TEX. CODE CRIM. P. art. 20A.205. *See id.* at 147 (citing FED. R. CRIM. P. 6(e) and TEX. CODE CRIM. P. art. 20.02(d)).

11

to avoid possible injustice. First, with regard to Netflix's prayer for preliminary and permanent injunctive relief, Babin's mental state in seeking the underlying indictments is material to showing a "bad faith" prosecution in violation of the United States Constitution and in retaliation against Netflix for exercising its First Amendment rights. Second, with respect to Babin's invocation of the independent intermediary defense, Netflix's claim will be irreparably harmed if it is prevented from discovering evidence that shows the grand jury proceedings in Tyler County were "tainted" because Babin withheld or misconstrued evidence, misstated the law, or otherwise misled the grand jury.

Arguably, either of these two reasons would independently suffice, and certainly, in combination, it appears beyond dispute that injustice would result if the requested grand jury materials are not produced. *See In re Grand Jury Proceedings Relative to Perl*, 838 F.2d at 307–08 (claims "based upon [a] theory of fraud and deceit" sufficed to show a "particularized need" for grand jury materials, because the case would be "significantly hampered" otherwise); *Euresti*, 769 S.W.2d at 578–79 (when prosecutorial misconduct is alleged, "grand jury or other testimony" is not only "discoverable," but "admissible."); *Sanchez*, 2019 WL 12536398, at *2 ("injustice" would result "[w]ithout the grand jury testimony" of certain witnesses, because the plaintiffs would be unable to "properly test, rebut, or cross-examine" them); *Ramirez*, 2010 WL 11470102, at *2 ("[b]ecause part of [the] defense theory is based on a severance by the grand jury indictment of the causal link between any of their alleged wrongdoing and the prosecution of [the plaintiffs], the nature and extent of the evidence presented to the grand jury is directly at issue").

2. ***The need for disclosure outweighs the need for secrecy.***

Traditionally, five reasons have been advanced for maintaining the secrecy of grand jury proceedings:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent

> persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

See *Douglas Oil*, 441 U.S. at 219 n.10 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681–82 (1958)).

As an initial matter, because it is *Netflix*, the publicly named criminal defendant, seeking disclosure here, the first and fifth reasons are inapplicable. *See Anilao v. Spota*, 918 F. Supp. 2d 157, 179 (E.D.N.Y. 2013) (Bianco, J.). Furthermore, since the underlying grand jury proceedings have been terminated, the risks to the particular grand jury that indicted Netflix have been greatly "reduced" by the "passage of time." *Id*; *see also Dennis*, 384 U.S. at 872 n.18. Finally, with regard to *Douglas Oil*'s instruction to consider the risk to "future grand juries," *Douglas Oil*, 441 U.S. at 222, this Court finds such risk minimal. Netflix is not seeking the disclosure of the grand jury's deliberations, the deposition of any of its members, or the deposition of any witnesses that appeared before the grand jury. Accordingly, there is no tangible threat to the "free and untrammeled" discourse of future grand juries or the testimony of witnesses that might appear before them. *See also Frederick v. New York City*, No. 11 Civ. 469 (JPO), 2012 WL 4947806, at *6 (S.D.N.Y. 2012) (Oetken, J.) (explaining that "[g]rand jury witnesses should expect that their testimony may well be used against a third party at a trial—whether the criminal suspect under investigation or someone else entirely.") (emphasis original). It is also worth noting that the "public's interest in accurate information about its public officials" may be an additional factor that weighs in favor of disclosure here. *Anilao*, 918 F. Supp. 2d at 170.

### 3. *The request is structured to cover only material so needed.*

As a final matter, the Court finds that Netflix's request is "structured to cover only the

13

material needed." *See Sanchez*, 2019 WL 12536398, at *2–3; *Ramirez*, 2010 WL 11470102, at *2–3. It is uncontroverted that Netflix is *not* seeking to depose any grand jury members or witnesses, or to access any records of the grand jury's deliberations. [Dkt. 24 at 11]. Instead, its requests are narrowly tailored toward uncovering whether Babin properly presented "*all* the facts" and "applicable law" to the grand jury. *Hand*, 838 F.2d at 1427–28 (emphasis original); *Peralta*, 763 F. Supp. at 19–21. As explained earlier, these materials may (a) provide necessary evidence of Babin's state of mind in pursuing these indictments, which goes to the "bad faith" prong of Netflix's claim for preliminary or permanent injunctive relief, and (b) allow Netflix to challenge Babin's otherwise unverifiable assertion that the grand jury proceedings were untainted, which is an inherent component of his independent intermediary affirmative defense.

Therefore, Netflix has demonstrated a "particularized need" for the state grand jury materials, and its *Emergency Motion to Obtain Grand Jury Discovery* [Dkt. 24] is **GRANTED**. As a final safeguard, the Court **ORDERS** that the requested materials and interrogatory responses be submitted for its *in camera* inspection. *See Dennis*, 384 U.S. at 874 (explaining that "*in camera* inspection by the trial judge . . . may be useful in enabling the trial court to rule on a defense motion for production to it of grand jury testimony"). After the submitted materials and interrogatory responses have been inspected, the Court will enter a further order consistent with its *in camera* findings.

    II.    **Netflix's Opposed Rule 56(d) Motion to Continue Defendant's Motion for Summary Judgment [Dkt. 25].**

As a general rule, there is a "power inherent in every court to control the disposition of the causes on its docket." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). And it is unquestionable that district courts may exercise that power to ensure that cases are resolved efficiently and effectively. *United States v. Colomb*, 419 F.3d 292, 300 (5th Cir. 2005). Courts also have wide discretion under Rule 56 to "defer considering" a premature motion for summary judgment. FED.

14

R. CIV. P. 56(d).

For the foregoing reasons, in addition to those provided during the hearing on this matter, the Court **GRANTS** Netflix's *Rule 56(d) Motion to Continue* [Dkt. 25].

## **CONCLUSION**

It is therefore **ORDERED** that the Plaintiff, NETFLIX INC's *Emergency Motion to Obtain Grand Jury Discovery* [Dkt. 24] is hereby **GRANTED**. The Defendant, LUCAS BABIN, shall produce the materials requested in Netflix's Requests for Production Nos. 1–3, and respond to Netflix's Second Set of Interrogatories Nos. 15–20 **WITHOUT OBJECTION** and **SUBMIT** the same for *in camera* inspection by this Honorable Court no later than **3:00pm on Thursday, May 12, 2022**.[12]

**After the Court has inspected the submitted materials and interrogatory responses, it will enter a further order consistent with its *in camera* findings.**

It is further **ORDERED** that the Plaintiff, NETFLIX INC's *Opposed Rule 56(d) Motion to Continue Defendant's Motion for Summary Judgment* [Dkt. 25] is hereby **GRANTED**. All deadlines pertaining to the Defendant, LUCAS BABIN's *Amended Motion for Summary Judgment* [Dkt. 22] are hereby **STAYED** until after the June 14 hearing on the Plaintiff, NETFLIX INC's request for preliminary or permanent injunctive relief.

It is further **ORDERED** that the Defendant, LUCAS BABIN's *Motion for Summary Judgment* [Dkt. 21] and the Plaintiff, NETFLIX INC's *Opposed Motion for Expedited Briefing on*

---

[12] There are three reasons for this expedited deadline. First, as a practical matter, the requested materials are already in Babin's possession, so he should be able to comply in a timely manner with ease. Second, Babin made no arguments in his briefing or at the hearing that he would face any logistical difficulties in producing the requested materials or responding to Netflix's interrogatories, thus, he has waived the opportunity to raise such arguments now. *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) (recognizing the long-standing "general rule, [that] when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."). Finally, the deadline for the hearing on Netflix's motion for preliminary or permanent injunctive relief looms ever nearer. Thus, in the interest of securing justice for all parties, this Court cannot tolerate any further delays occasioned by this discovery dispute.

*Rule 56(d) Motion* [Dkt. 26] are hereby **DENIED** as **MOOT**.[13]

**SIGNED this 9th day of May, 2022.**

_____
Michael J. Truncale
United States District Judge

---

[13] *See supra* n.1.