IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| NETFLIX, INC., §  Plaintiff, § | § | |
| v. | § | CIVIL ACTION NO. 9:22-CV-0031 |
| LUCAS BABIN, §  Defendant. § | § | |

### BABIN'S RESPONSE TO NETFLIX'S OPPOSED MOTION TO CONTINUE HEARING ON NETFLIX'S MOTION FOR INJUNCTIVE RELIEF

On May 27, 2022, Netflix filed a motion requesting that this Court continue the hearing in this matter currently set for June 14, 2022.[1] Netflix asserts that too little time remains for the Court to conduct its *in camera* inspection of Babin's grand jury-related discovery responses, and for Netflix to "explore" those responses if the Court orders them disclosed.[2] Netflix also explicitly suggests that it may seek Babin's deposition "depending on the quality" of the discovery responses, and due to the mere fact that Babin identified himself as a possible witness in faithfully answering a previous discovery request.[3] Finally, Netflix seeks, with reference to the Fifth Circuit's prodding regarding the fundamental question of this Court's subject-matter jurisdiction, to institute a separate briefing schedule

---

[1] Doc. 43.

[2] Id. at 1-2.

[3] Id. at 2.

on application of Younger to this matter.[4] Babin respectfully requests that the motion be denied.

As a threshold matter, Babin asserts that the scheduled hearing should not take place at all. A proper motion for summary judgment, dispositive of this entire matter as a matter of law, is before the Court. The parties apparently agree that despite denying Babin immediate mandamus relief, the Fifth Circuit sent a very clear message: "*Younger* is a serious consideration that the district court should address at the earliest opportunity. For now, we conclude that *Younger* can wait, but not long."[5] Babin interprets this to mean, in no uncertain terms, that his motion for summary judgment, which raises this issue directly, should be dealt with "at the earliest opportunity." Netflix has the right, as does every other nonmovant, to respond to this motion with or without evidence, and in doing so demonstrate to the Court why the motion should not be granted.[6]

Netflix has been provided with additional time to conduct discovery in lieu of a timely response,[7] and has made use of that time.[8] Netflix has been granted a historically unique avenue to seek responses to *all* the grand jury discovery it thus far proposed.[9] Babin

---

[4] Id. at 3-4.

[5] Doc. 42 at 7.

[6] Fed. R. Civ. P. 56(c).

[7] Doc. 34 at 14-15.

[8] Doc. 43-1.

[9] Doc. 34; Doc. 42 at 10-12 (analyzing the unprecedented procedural approach to authorizing state grand jury discovery in this matter and concluding that lack of binding precedent precluded entitlement to a writ of mandamus).

respectfully requests that this Court make its determination regarding the grand jury discovery – with consideration of the Supreme Court precedent detailed below – order Netflix to respond to Babin's motion for summary judgment, and after due consideration, rule.

Relatedly, Babin opposes the separate briefing schedule suggested by Netflix. There is no good cause to isolate Younger considerations and ignore Babin's other grounds to dispose of this entire matter. Babin respectfully asserts that this maneuver is plainly an effort to create a litigation firewall, intended to ensure that at least some portion of Netflix's lawsuit perpetuates in this Court.

Netflix asserts that this Court should take a "direct path to resolving threshold issues of subject-matter jurisdiction."[10] Babin agrees with the sentiment entirely, but Netflix, characteristically, ignores an elephant in the room: Younger is not the only threshold issue of subject-matter jurisdiction. Mootness is also jurisdictional, and federal courts have "an independent obligation" also to consider that issue before addressing the merits of a case.[11] Both of these jurisdictional issues must be decided prior to any merits determination, and their combination disposes of the entire case. The inclusion of alternative merits arguments in Babin's MSJ obviously does not render the motion unworkable, as Netflix suggests; it is proper and routine motion practice. Moreover, a single ruling on one consolidated dispositive motion, which includes all asserted grounds for dismissal, is obviously a more

---

[10]   Doc. 43 at 4.

[11]   Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); see also Robinson v. Ferguson, 849 Fed, Appx. 77, 79-80 (5th Cir. 2021) (a district court is "not empowered to rule on the merits" absent a determination of mootness).

"direct path" to resolution in this matter than creating multiple *ad hoc* procedures to address each defense in isolated vacuums.

Finally, Babin addresses Netflix's indication that the grand jury discovery requests currently under review by the Court were merely a first salvo on the issue. Even in granting Netflix a metaphorical foot in the door to the Tyler County Grand Jury, this Court supported its ruling by emphasizing the limited nature of the proposed discovery.[12]

> "Netflix is not seeking the disclosure of the grand jury's deliberations, the deposition of any of its members, or *the deposition of any witnesses that appeared before the grand jury*. Accordingly, there is no tangible threat to the 'free and untrammeled' discourse of future grand juries or the testimony of witnesses that might appear before them."[13]
>
> "It is uncontroverted that Netflix is *not* seeking to depose any grand jury members or witnesses …"[14]

Netflix makes clear that it has no intention of limiting itself to its initial, purportedly limited, grand jury discovery. Netflix now does, explicitly, contemplate deposing a grand jury witness, who also happens to be an elected district attorney and the prosecutor in an ongoing criminal matter. This creeping intrusion into the grand jury proceedings in Netflix's criminal matters, which continues to lack any evidentiary or legal support, must end. This Court cannot accept the false premise that Netflix has an unfettered right to not

---

[12] Doc. 34 at 13-14.

[13] Id. at 13 (emphasis added).

[14] Id. at 14 (emphasis in original).

only to drop a line, but also to cast nets, and perhaps dredge the pond, until it finds some evidentiary fish to support its allegations.

Babin asks the Court to consider what the core question behind the independent intermediary defense is in this case. In liability cases, such as the much-discussed <u>Hand v. Gary</u>,[15] the core question for the court is whether the prosecutor acted in some way to taint the deliberations of the grand jury. Given that a prosecutor's acts, and liability therefor, are the ultimate issues in such cases, it is understandable why certain grand jury discovery may be necessary.

The core question behind the independent intermediary defense in this case, however, and ultimate issue, is whether the grand jury's return of indictments against Netflix are supported by probable cause. The Supreme Court has made clear, post-<u>Hand</u>, that district courts simply cannot engage in this inquiry. In <u>United States v. Williams</u>, the Supreme Court declared that the grand jury is constitutionally prescribed, independent of any branch of government, and free from any supervision by the courts.[16] The Supreme Court also squarely and explicitly rejected the notion, oft asserted in this matter, that a grand jury's findings may be questioned based upon the quantity and quality of the evidence presented to it.[17] A block quote is appropriate:

---

[15] 838 F.2d 1420 (5th Cir. 1988).

[16] 504 U.S. 36, 47 (1992).

[17] <u>Id.</u> at 51.

Respondent makes a generalized appeal to functional notions: Judicial supervision of the quantity and quality of the evidence relied upon by the grand jury plainly facilitates, he says, the grand jury's performance of its twin historical responsibilities, *i.e.*, bringing to trial those who may be justly accused and shielding the innocent from unfounded accusation and prosecution. We do not agree. The rule would neither preserve nor enhance the traditional functioning of the institution that the Fifth Amendment demands. To the contrary, requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body.

It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. That has always been so; and to make the assessment it has always been thought sufficient to hear only the prosecutor's side. As Blackstone described the prevailing practice in 18th-century England, the grand jury was "only to hear evidence on behalf of the prosecution[,] for the finding of an indictment is only in the nature of an enquiry or accusation, which is afterwards to be tried and determined." So also in the United States. According to the description of an early American court, three years before the Fifth Amendment was ratified, it is the grand jury's function not "to enquire … upon what foundation [the charge may be] denied," or otherwise to try the suspect's defenses, but only to examine "upon what foundation [the charge] is made" by the prosecutor. As a consequence, neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented.

Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system. If a "balanced" assessment of the entire matter is the objective, surely the first thing to be done – rather than requiring the prosecutor to say what he knows in defense of the target of the investigation – is to entitle the target to tender his own defense. To require the former while denying (as we do) the latter would be quite absurd. It would also be quite pointless, since it would merely invite the target to circumnavigate the system by delivering his

6

> exculpatory evidence to the prosecutor; whereupon it would *have* to be passed on to the grand jury – unless the prosecutor is willing to take the chance that a court will not deem the evidence important enough to qualify for mandatory disclosure.
>
> Respondent acknowledges (as he must) that the "common law" of the grand jury is not violated if the *grand jury itself* chooses to hear no more evidence than that which suffices to convince it an indictment is proper. Thus, had the Government offered to familiarize the grand jury in this case with the five boxes of financial statements and deposition testimony alleged to contain exculpatory information, and had the grand jury rejected the offer as pointless, respondent would presumably agree that the resulting indictment would have been valid. Respondent insists, however, that courts must require the modern prosecutor to alert the grand jury to the nature and extent of the available exculpatory evidence, because otherwise the grand jury "merely functions as an arm of the prosecution." We reject the attempt to convert a non-existent duty of the grand jury itself into an obligation of the prosecutor. The authority of the prosecutor to seek an indictment has long been understood to be "coterminous with the authority of the grand jury to entertain [the prosecutor's] charges." If the grand jury has no obligation to consider all "substantial exculpatory" evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.[18]

It should be noted that the Williams decision involved a federal district court attempting to invoke supervisory authority over a grand jury in its *own* criminal proceedings and not, as here, attempted supervision of grand jury decisions in the separate courts of a separate sovereign.[19]

---

[18] Id. at 51-53 (internal citations omitted).

[19] Id. at 37-40, 55.

"The grand jury gets to say – without any review, oversight, or second-guessing – whether probable cause exists to think a person committed a crime."[20] The Supreme Court has made clear – repeatedly – that the nature of the prosecutor's presentation of evidence to the grand jury is irrelevant to the fact and the legal inviolability of the grand jury's finding.

It is undisputed that the Tyler County Grand Jury found probable cause to return indictments against Netflix. This Court simply does not have the authority to second-guess those decisions, and those decisions insulate Babin from any claim of constitutional wrongdoing in pursuing charges against Netflix. Permitting Netflix to discover as to how those decisions may have been arrived at is simply and plainly impermissible. As such, there is no cause to permit further discovery, no cause to entertain further proceedings, and no cause to further delay ruling on Babin's MSJ.

Defendant Lucas Babin respectfully requests that Netflix's motion requesting that this Court continue the hearing in this matter currently set for June 14, 2022 be denied.

**LUCAS BABIN**
**CRIMINAL DISTRICT ATTORNEY**
Tyler County, Texas
100 West Bluff, Courthouse Annex
Woodville, Texas 75979
Ph:  409-283-8136
Fx:  409-283-6128
l.babin@co.tyler.tx.us

*/s/ CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Special Prosecutor for Tyler County

---

[20]  Kaley v. United States, 571 U.S. 320, 328 (2014).

                        Assistant Attorney General
                        Attorney-In-Charge
                        State Bar No. 24065628

                        P.O. Box 12548, Capitol Station
                        Austin, Texas 78711
                        (512) 463-2157 (Phone No.)
                        (512) 370-9314 (Fax No.)

## CERTIFICATE OF SERVICE

I, **CHRISTOPHER LEE LINDSEY**, do hereby certify that a true and correct copy of the foregoing has been served on all parties by the Court's electronic noticing system, on this the 2nd day of June, 2022.

                        */s/CHRISTOPHER LEE LINDSEY*
                        **CHRISTOPHER LEE LINDSEY**
                        Special Prosecutor for Tyler County