IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| NETFLIX, INC., | § | |
|    Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 9:22-CV-031 |
| | § | |
| LUCAS BABIN, | § | |
|    Defendant. | § | |

**LUCAS BABIN'S OPENING BRIEF ON JURISDICTIONAL ISSUES**

I.  **STATEMENT OF THE CASE & ISSUES**

Plaintiff Netflix, Inc., seeks to personally and permanently enjoin Lucas Babin, the elected Criminal District Attorney of Tyler County, Texas.[1] Netflix claims that Babin is "abusing his office and infringing on Netflix, Inc.'s constitutional rights" by pursuing criminal charges against Netflix for the latter's promotion of the film *Cuties* on its streaming service.[2] Counts I and II are identically worded allegations that Babin has violated Netflix's Fifth and First Amendment rights, and seek to enjoin Babin from seeking any indictment against Netflix under Texas Penal Code Section 43.262.[3] Count III alleges that Babin has violated Netflix's First Amendment rights, and seeks to enjoin Babin from pursuing four existing indictments against Netflix for violations of Texas Penal Code Section 43.25.[4] Count IV alleges that Babin has violated Netflix's First Amendment rights,

---

[1]   Doc. 1 at 1.

[2]   Id.

[3]   Id. at ¶¶ 74-90.

[4]   Id. at ¶¶ 91-96.

and seeks to enjoin Babin universally "from retaliating against Netflix any further, such as indicting Netflix on any further charges relating in any way to Netflix's promotion of *Cuties*."[5] All claims are brought against Babin in his individual capacity, pursuant to 42 U.S.C. § 1983.

This Court has identified and ordered the parties to brief the following jurisdictional issues arising from Netflix's complaint:

(a) Mootness as to the charge under Texas Penal Code § 43.262; and

(b) <u>Younger</u> abstention as to the charge under Texas Penal Code § 43.25.[6]

Babin has previously raised and briefed these same issues in his pending amended motion for summary judgment, and he hereby refers to and incorporates all arguments and evidence therein for the purposes of this briefing.[7] Babin opens his briefing as follows.

## II.   STATEMENT OF MATERIAL FACTS

Netflix began streaming *Cuties* in Texas on September 9, 2020.[8] Within the month the Grand Jury for Tyler County, Texas, returned an indictment against Netflix for promotion of lewd visual material depicting child [sic] pursuant to Texas Penal Code Section 43.262.[9] Section 43.262 provides in relevant part:

> A person commits an offense if the person knowingly possesses, accesses with intent to view, or promotes visual material that:

---

[5]   Id. at ¶¶ 97-104.

[6]   Doc. 46.

[7]   Docs. 22, 22.1, and 22.2.

[8]   Doc. 1 at ¶ 17.

[9]   Id. at Exhibit 2.

> (1) depicts the lewd exhibition of the genitals or pubic area of an unclothed, partially clothed, or clothed child who is younger than 18 years of age at the time the visual material was created;
> (2) appeals to the prurient interest in sex; and
> (3) has no serious literary, artistic, political, or scientific value.[10]

Netflix entered a plea of not guilty on October 23, 2020.[11] Between October 2020 and August 2021 the case did not advance, and neither the State nor Netflix did anything to prompt action.[12] While not material to disposition of this matter, the Court might take judicial notice that the criminal justice process in Texas generally ground to a halt during this period due to panic concerning COVID-19. Netflix's criminal case was set for docket call in August 2021, but was reset, by agreement, for February 2022.[13]

On October 26, 2021, Texas' First District Court of Appeals handed down a decision concerning a Harris County prosecution under Section 43.262. That decision, Ex parte Lowry,[14] struck down the "possession" portion of Section 43.262 for overbreadth in violation of the First Amendment.[15] The opinion was specifically limited to the "possessing" element of the statute, passing on the "accessing" or "promoting" elements.[16] Babin's prosecution of Netflix was mentioned in dicta, but not subject to the holding, and

---

[10]   TEX. PEN. CODE § 43.262(b).

[11]   Doc. 1 at ¶ 39.

[12]   Id. at ¶ 40.

[13]   Id. at ¶ 41.

[14]   639 S.W.3d 151 (Tex. App.—Houston [1st Dist.] 2021, pet. granted) (page numbering derived from 2021 Tex. App. LEXIS 8629).

[15]   Id. at *32.

[16]   Id. at *12-*13.

only to muse that persons *viewing* Netflix might be prosecuted under Section 43.262 due to the overbreadth of the *possession* element of the statute.[17] The Texas Court of Criminal Appeals granted the State's petition to review Lowry on March 2, 2022, unsettling the finality of the First District's ruling.[18] The matter remains pending before the Court of Criminal Appeals.

Netflix confronted Babin with the Lowry decision and asked him to dismiss the Section 43.262 charge.[19] When Babin did not immediately comply, Netflix filed a petition for writ of habeas corpus on November 15, 2021 – 20 days after the Lowry decision.[20]

During its January 2022 term the Grand Jury for Tyler County, Texas, returned four new indictments against Netflix for sexual performance by a child, pursuant to Texas Penal Code Section 43.25(d).[21] Section 43.25(d) provides:

> A person commits an offense if, knowing the character and content of the material, he produces, directs, or promotes a performance that includes sexual conduct by a child younger than 18 years of age.

Babin successfully moved to dismiss Netflix's previous indictment under Section 43.262, without prejudice, on March 2, 2022.[22] Babin, in his capacity as chief policymaker for felony prosecutions in Tyler County, Texas, executed a policy on March 15, 2022, barring

---

[17]   Id. at *31.

[18]   Ex parte Lowry, No. PD-0887-21, 2022 Tex. Crim. App. LEXIS 143 (Tex. Crim. App. 2022).

[19]   Doc. 1 at ¶¶ 44-45.

[20]   Id. at ¶ 46, Exhibit 5.

[21]   Id. at Exhibits 6-9.

[22]   Id. at Exhibit 10.

prosecution of any offense under Section 43.262 in Tyler County unless and until (1) Section 43.262 is deemed facially constitutional; (2) the Lowry decision has otherwise been abrogated in favor of Section 43.262; or (3) Section 43.262 has been amended by the Texas Legislature.[23]

### III.   BRIEF

#### A. Netflix's Claims as to § 43.262 Charges are Moot

Mootness is a jurisdictional issue, and federal courts have "an independent obligation" resolve it before addressing the merits of a case.[24] Netflix's claims regarding Texas Penal Code § 43.262 are moot because Netflix is admittedly not subject to any charge thereunder and, due to Babin's official policy on the subject, Netflix is not reasonably likely to face any such charge in the future.

Generally, a defendant's voluntary cessation of a challenged practice does not deprive a federal court of power to determine the legality of the practice, even in cases involving claims for injunctive relief.[25] This general rule is not absolute, but voluntary cessation moots a case "only if it is 'absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur.'"[26]

---

[23]   Doc. 22.2.

[24]   Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010); see also Robinson v. Ferguson, 849 Fed, Appx. 77, 79-80 (5th Cir. 2021) (a district court is "not empowered to rule on the merits" absent a determination of mootness).

[25]   Meza v. Livingston, 607 F.3d 392, 399-400 (5th Cir. 2010) (internal quotes and citations omitted).

[26]   Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000) (quoting United States v. Concentrated Phosphate Exp. Ass'n, 393 U.S. 199, 203 (1968)).

The general rule notwithstanding, the Fifth Circuit recognizes that government actors are different. "[C]ourts are justified in treating a voluntary *governmental* cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity."[27] Government actors acting in the scope of their official duties "are accorded a presumption of good faith because they are public servants."[28] Absent evidence to the contrary, it is "assume[d] that formally announced changes to official governmental policy are not mere litigation posturing."[29]

Recent Fifth Circuit precedent helpfully clarifies the difference between public defendants who properly moot claims by voluntary cessation, and those who do not. In Speech First, Inc. v. Fenves,[30] the President of the University of Texas failed to moot First Amendment challenges to university speech codes. The Fifth Circuit found that, despite the "solicitude" afforded to government actors, the University maintained the definitions at the heart of the challenged codes, and "ha[d] not issued a controlling statement of future intention" not to reenact the codes and pursue enforcement.[31] While President Fenves averred to the Court that the University would not reenact the challenged codes, there was no evidence that Fenves controlled the University for that purpose.[32] Fenves also continued

---

[27] Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009) (emphasis added).

[28] Id.

[29] Id.

[30] 979 F.3d 319 (5th Cir. 2020).

[31] Id. at 328.

[32] Id. at 328-29.

to defend the legality of the challenged codes, creating a logical implication that the cessation was no more than litigation posturing.[33]

In Sossamon v. Lone Star State of Texas, on the other hand, Texas Department of Criminal Justice (TDCJ) Executive Director Quarterman successfully demonstrated mootness.[34] Quarterman executed an affidavit demonstrating that he was the party responsible for enforcing the challenged TDCJ policy, and that the policy had been terminated agency-wide.[35] The Fifth Circuit found that Quarterman's controlling policy change obviated any concern for a whimsical resurrection of the challenged conduct, and made any claim of future harm "too speculative to avoid mooting the case."[36]

Babin, in his capacity as elected Criminal District Attorney of Tyler County, and chief policymaker of the office thereof, has executed a policy precluding any Tyler County prosecution under Section 43.262 unless and until constitutional concerns, including those raised by Netflix, are resolved.[37] In doing so, Babin joins Director Quarterman in making "absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur."[38] Babin undisputedly controls felony prosecution in Tyler County, and his policy

---

[33] Id. at 329.

[34] Sossamon, 560 F.3d at 324-26.

[35] Id. at 324-25.

[36] Id. at 325.

[37] Doc. 22.2.

[38] Concentrated Phosphate, 393 U.S. at 203.

makes any prospect of prosecution under Section 43.262, absent settled law establishing the constitutionality thereof, "too speculative to avoid mooting the case."[39]

Babin also notes and avers for the record that he takes no position in this case on the facial constitutionality of § 43.262, considering the Lowry decision and the absence of any final word on the subject from the Texas Court of Criminal Appeals. Babin, unlike President Fenves, does not feign surrender for jurisdictional purposes and attack on the merits. The Court must "assume that [Babin's] formally announced changes to official governmental policy are not mere litigation posturing."[40]

Netflix's claims regarding Texas Penal Code § 43.262 are moot, and this Court is without jurisdiction to hear them. All such claims must be dismissed.

**B. The Younger Abstention Doctrine Bars Netflix's Claims as to § 43.25**

"[F]ederal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted."[41] The so-called Younger abstention doctrine is a basic rule of equity which acts to "prevent erosion of the role of the jury," "avoid duplication of legal proceedings," and, most importantly, protect "Our Federalism."[42]

Younger applies, and a federal court must abstain, when (1) the dispute involves an "ongoing state judicial proceeding;" (2) an important state interest in the subject matter is

---

[39]    Sossamon, 560 F.3d at 325.

[40]    Id.

[41]    Tex. Ass'n of Bus. v. Earle, 388 F.3d 515, 519 (5th Cir. 2004) (citing Younger v. Harris, 401 U.S. 37 (1971), and Samuels v. Mackell, 401 U.S. 66 (1971)).

[42]    Younger, 401 U.S. at 43-44.

implicated; and (3) the state proceedings afford an adequate opportunity to raise constitutional challenges.[43] Netflix makes no effort to dispute that the initial <u>Younger</u> test is met in this case, skipping straight to the doctrine's exceptions in Count III. For the record, however, Babin notes that (1) "criminal charges in state court" against Netflix are admittedly pending;[44] (2) the State of Texas has a strong interest in enforcing its criminal laws;[45] and (3) Texas admittedly affords an opportunity to raise constitutional challenges by state petitions for writ of habeas corpus.[46] All three <u>Younger</u> conditions are met in this case.

When the <u>Younger</u> test is met, a federal court may only enjoin a pending state criminal court proceeding if (1) the state proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal plaintiff seeks to challenge a state statute that is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it;" or (3) where other extraordinary circumstances threaten irreparable loss that is both great and immediate.[47] Netflix plausibly asserts only that Babin sought

---

[43] <u>Wightman v. Tex. Supreme Ct.</u>, 84 F.3d 188, 189 (5th Cir. 1996).

[44] Doc. 1 at ¶ 73.

[45] <u>De Spain v. Johnston</u>, 731 F.2d 1171, 1176 (5th Cir. 1984).

[46] Doc. 1 at ¶ 48.

[47] <u>Gates v. Strain</u>, 885 F.3d 874, 880 (5th Cir. 2018) (quoting <u>Younger</u>, 401 U.S. at 45).

indictments under 43.25 in bad faith, qualifying for the first exception to Younger abstention.[48]

Netflix's specific allegation of bad faith apparently takes two forms: that Babin pursues the four active indictments with "utter and knowing lack of probable cause," and that Babin has purposefully used his "prosecutorial discretion to file and dismiss charges to strip Netflix of its rights to redress."[49]

Regarding the former allegation, Netflix's allegations ignore a key fact: the Grand Jury. Netflix's allegation that Babin pursues the four indictments absent probable cause is false as a matter of law, because the Grand Jury has found probable cause for those four charges, and the Grand Jury – not Babin – indicted Netflix. The Fifth Circuit has long held that there is no constitutional violation by an official initiating criminal charges "if the facts supporting the warrant or indictment are put before an impartial intermediary such as a magistrate or a grand jury, for that intermediary's independent decision breaks the causal chain and insulates the initiating party."[50] Netflix demonstrates no taint to the grand jury proceedings, but asks the Court to simply presume it based on the mere fact of the indictments.[51]

---

[48] See Doc. 1 at ¶¶ 91-96.

[49] Id. at ¶ 95.

[50] Hand v. Gary, 838 F.2d 1420, 1427-28 (5th Cir. 1988) (citing Rodriguez v. Ritchey, 556 F.2d 1185, 1194-95 (5th Cir. 1977)) (internal quote marks and original emphasis omitted).

[51] See Id. at 1427; see also Craig v. Dallas Area RTA, 504 Fed. Appx. 328, 332-33 (5th Cir. 2012) (Unsubstantiated assertions of grand jury taint, or mere allegations of a personal vendetta without evidence, cannot defeat summary judgment).

While the independent intermediary doctrine is generally applied in a liability context, it has logical and necessary implications in this matter. If, as the doctrine holds, *Cuties* was placed before a Texas grand jury, and that grand jury returned four indictments for violations of Section 43.25, that decision "breaks the chain of causation" for any bad-faith conduct on Babin's part. Netflix cannot establish that Babin has violated its constitutional rights by pursuing charges absent probable cause, and has therefore failed to state any claim for which relief may be granted. Moreover, and perversely, Netflix's requested relief would require Babin to compromise his oath of office by ignoring the Grand Jury, and to refuse prosecution of what has independently been found to be evidence of crimes sufficient to present to a petit jury. Babin respectfully asserts that fulfilling his sworn duties as elected District Attorney of Tyler County is not evidence of bad faith.

Regarding Netflix's second allegation of bad faith, "[t]he decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced."[52] "The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution."[53] In blunt terms, Netflix simply does not like being charged with crimes, and seeks to enlist the judiciary in a blatantly unconstitutional intrusion on the duties of an executive. Fundamental concepts of separation of powers

---

[52] United States v. Young, 231 F.Supp. 3d. 33, 40 (5th Cir. 2017) (quoting United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000)) (citing U.S. Const. Art. II, § 3).

[53] Id.

cannot permit Netflix's requested relief on the mere allegation that one criminal charge has been abandoned in favor of another, for entirely speculated reasons.

The foregoing notwithstanding, the core question behind the independent intermediary defense in this case, and ultimate issue, is whether the indictments against Netflix are supported by probable cause. The Supreme Court has made clear that district courts simply cannot engage in this inquiry. In United States v. Williams, the Supreme Court declared that the grand jury is constitutionally prescribed, independent of any branch of government, and free from any supervision by the courts.[54] The Supreme Court also squarely and explicitly rejected the notion that a grand jury's findings may be questioned based upon the quantity and quality of the evidence presented to it.[55] A block quote is appropriate:

> Respondent makes a generalized appeal to functional notions: Judicial supervision of the quantity and quality of the evidence relied upon by the grand jury plainly facilitates, he says, the grand jury's performance of its twin historical responsibilities, *i.e.*, bringing to trial those who may be justly accused and shielding the innocent from unfounded accusation and prosecution. We do not agree. The rule would neither preserve nor enhance the traditional functioning of the institution that the Fifth Amendment demands. To the contrary, requiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body.
>
> It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge. That has always been so; and to make the assessment it has always been thought sufficient to hear only the prosecutor's side. As Blackstone described the prevailing practice

---

[54]   504 U.S. 36, 47 (1992).

[55]   Id. at 51.

in 18th-century England, the grand jury was "only to hear evidence on behalf of the prosecution[,] for the finding of an indictment is only in the nature of an enquiry or accusation, which is afterwards to be tried and determined." So also in the United States. According to the description of an early American court, three years before the Fifth Amendment was ratified, it is the grand jury's function not "to enquire … upon what foundation [the charge may be] denied," or otherwise to try the suspect's defenses, but only to examine "upon what foundation [the charge] is made" by the prosecutor. As a consequence, neither in this country nor in England has the suspect under investigation by the grand jury ever been thought to have a right to testify or to have exculpatory evidence presented.

Imposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system. If a "balanced" assessment of the entire matter is the objective, surely the first thing to be done – rather than requiring the prosecutor to say what he knows in defense of the target of the investigation – is to entitle the target to tender his own defense. To require the former while denying (as we do) the latter would be quite absurd. It would also be quite pointless, since it would merely invite the target to circumnavigate the system by delivering his exculpatory evidence to the prosecutor; whereupon it would *have* to be passed on to the grand jury – unless the prosecutor is willing to take the chance that a court will not deem the evidence important enough to qualify for mandatory disclosure.

Respondent acknowledges (as he must) that the "common law" of the grand jury is not violated if the *grand jury itself* chooses to hear no more evidence than that which suffices to convince it an indictment is proper. Thus, had the Government offered to familiarize the grand jury in this case with the five boxes of financial statements and deposition testimony alleged to contain exculpatory information, and had the grand jury rejected the offer as pointless, respondent would presumably agree that the resulting indictment would have been valid. Respondent insists, however, that courts must require the modern prosecutor to alert the grand jury to the nature and extent of the available exculpatory evidence, because otherwise the grand jury "merely functions as an arm of the prosecution." We reject the attempt to convert a non-existent duty

> of the grand jury itself into an obligation of the prosecutor. The authority of the prosecutor to seek an indictment has long been understood to be "coterminous with the authority of the grand jury to entertain [the prosecutor's] charges." If the grand jury has no obligation to consider all "substantial exculpatory" evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it.[56]

It should be noted that the Williams decision involved a federal district court attempting to invoke supervisory authority over a grand jury in its *own* criminal proceedings and not, as here, attempted supervision of grand jury decisions in the separate courts of a separate sovereign.[57]

"The grand jury gets to say – without any review, oversight, or second-guessing – whether probable cause exists to think a person committed a crime."[58] The Supreme Court has made clear – repeatedly – that the nature of the prosecutor's presentation of evidence to the grand jury is irrelevant to the fact and the legal inviolability of the grand jury's finding.

It is undisputed that the Tyler County Grand Jury found probable cause to return indictments against Netflix. This Court simply does not have the authority to second-guess those decisions, and those decisions insulate Babin from any claim of constitutional wrongdoing in pursuing charges against Netflix. Absent the availability of such claims, there is no exception to Younger, and this Court must abstain from interfering with the

---

[56] Id. at 51-53 (internal citations omitted).

[57] Id. at 37-40, 55.

[58] Kaley v. United States, 571 U.S. 320, 328 (2014).

ongoing prosecution of Netflix under Texas Penal Code § 43.25. All claims seeking to do so must be dismissed.

IV.     **PRAYER**

All claims brought by Netflix in this matter are either moot or subject to the <u>Younger</u> abstention doctrine. This Court has no jurisdiction to proceed, and Lucas Babin respectfully requests that this matter be dismissed with prejudice.

**LUCAS BABIN**
**CRIMINAL DISTRICT ATTORNEY**
Tyler County, Texas
100 West Bluff, Courthouse Annex
Woodville, Texas  75979
Ph:  409-283-8136
Fx:  409-283-6128
l.babin@co.tyler.tx.us

*/s/ CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Special Prosecutor for Tyler County

Assistant Attorney General
Attorney-In-Charge
State Bar No. 24065628

P.O. Box 12548, Capitol Station
Austin, Texas 78711
(512) 463-2157 (Phone No.)
(512) 370-9314 (Fax No.)

**CERTIFICATE OF SERVICE**

I, **CHRISTOPHER LEE LINDSEY**, do hereby certify that a true and correct copy of the foregoing has been served on all parties by the Court's electronic noticing system, on this the 23rd day of June, 2022.

*/s/CHRISTOPHER LEE LINDSEY*
**CHRISTOPHER LEE LINDSEY**
Special Prosecutor for Tyler County